2024 IL App (1st) 231879-U

No. 1-23-1879B

Order filed January 4, 2024

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23DV7627201 |
| | ) | |
| MATTHEW CHAPMAN, | ) | Honorable |
| | ) | Torrie Corbin, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE LYLE delivered the judgment of the court.
Justices Mikva and Navarro concurred in the judgment.

**ORDER**

¶ 1     *Held*: We affirm the circuit court's order granting the State's petition for pretrial detention.

¶ 2     Defendant Matthew Chapman appeals from an order of the circuit court denying him pretrial release under article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022) (Code)), as amended by Public Act 101-652 § 10-255 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today Act (Act). Mr. Chapman argues that the court erred in granting the State's petition where the State referred to

surveillance video of the alleged incident in its proffer, but did not tender the video or a summary of its contents to the defense prior to the hearing. Mr. Chapman also contends that the circuit court erred in finding that the State met its burden of proving by clear and convincing evidence that the proof was evident or the presumption great that Mr. Chapman committed the offenses charged, that he posed a real and present threat to the safety of any person or persons or the community, and that no condition or combination of conditions could mitigate that real and present threat. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 3                                   I. BACKGROUND

¶ 4     On September 9, 2023, Mr. Chapman was charged by felony complaint with unlawful restraint (720 ILCS 5/10-3(a) (West 2022)), aggravated domestic battery causing permanent disfigurement (720 ILCS 5/12-3.3(a) (West 2022)), and aggravated domestic battery, strangulation (720 ILCS 5/12-3.3(a-5) (West 2022)), and a warrant was issued for his arrest. On September 29, 2023, the State filed a petition for a pretrial detention hearing. In the petition, the State alleged that Mr. Chapman committed the offense of aggravated domestic battery in that, during an altercation at O'Hare International Airport, he strangled his former girlfriend, bit her cheek, which caused a permanent scar, and grabbed her and would not let go.

¶ 5     At the hearing, the assistant State's attorney (ASA) represented that she tendered to defense counsel the police reports that were in her possession, Mr. Chapman's "rap sheet, his LEADS, a copy of all of the complaints, and summaries from the victim and eyewitness' statements." In its proffer, the State alleged that the incident occurred on July 13, 2023, at O'Hare Airport. The victim and Mr. Chapman had been dating "on and off" since 2020. While the victim was in the security line, Mr. Chapman approached her and grabbed her from behind. He then grabbed her throat with his left hand, impeding her ability to breathe. Mr. Chapman then bit the victim's cheek, causing

two lacerations on the side of her face. He then held the victim by the neck and directed her to a different security line. Once they were back in line, Mr. Chapman attempted to rip open the lacerations on the victim's face with his fingers.

¶ 6    The victim was able to get away from Mr. Chapman and ran, but Mr. Chapman caught her, pushed her against a wall, and bit her cheek again. He also struck her with a closed fist, and then threw her to the ground and continued to attack her. He bit her on the face again and bit her on the right side of her abdomen. Two civilians lifted Mr. Chapman off of the victim and she fled for the airport exit. Mr. Chapman followed her outside of the airport where he again grabbed her by the neck and pushed her against a metal railing causing her to sustain a "fracture." A nearby TSA agent flagged down police and Mr. Chapman was still on the scene when police arrived. The ASA represented that the entire incident was captured on surveillance video. The video was currently in police custody, but the felony review unit reviewed the video prior to filing the charges. The victim identified Mr. Chapman in a show-up and the victim had visible lacerations on her face.

¶ 7    The State also presented evidence of Mr. Chapman's criminal background. In 2021, Mr. Chapman received a three-year sentence for unlawful use of a weapon by a felon. He was on parole for that offense when the offenses in this case occurred. Mr. Chapman was also convicted of robbery in 2005, for which he received a sentence of seven years. Mr. Chapman had three misdemeanors, a 2017 "driving 40 plus miles an hour where he was attempting to obstruct," and a 2013 retail theft. Mr. Chapman also had four previous arrests for domestic battery, the most recent from 2021 with the same victim as in this case.

¶ 8    In mitigation, defense counsel represented that Mr. Chapman was 37 years old and had lived in Chicago his entire life. He lived with his mother and one of his two children. He was not working due to a heart condition. Defense counsel noted that because this case was originally

charged as misdemeanor and was dismissed before being brought as a felony, Mr. Chapman had been out of custody for more than 30 days and there was no indication that he made contact with the victim during that period. Defense counsel contended that it was clear that lesser conditions could satisfy the safety of the complaining witness, including a no contact order, GPS monitoring, and home confinement.

¶ 9 Defense counsel noted that the original statement from the victim did not include any allegations that Mr. Chapman grabbed her by the neck, and the only injuries noted were the marks on her face. In addition, none of the witness statements indicated that they saw Mr. Chapman grab the victim by the neck or choke her. Counsel also asserted that the State did not proffer any evidence of permanent disfigurement. Defense counsel finally noted that her office had not been tendered the surveillance video referenced by the ASA.

¶ 10 The pretrial services officer stated that Mr. Chapman had received a "Yes" for new violent criminal activity flag. Mr. Chapman had been rated a 4 out of 6 on the new criminal activity scale and a 3 out of 6 on the failure to appear scale. Pretrial services recommended maximum conditions.

¶ 11 The court found that if the State's allegations were true, then this was a "very brazen" attack because it occurred in public. The court stated that even if defense counsel's representations that Mr. Chapman did not grab the victim by the neck were true, the allegations were still "extremely troubling." The court noted that Mr. Chapman's actions were "pretty bold" to do in an airport. The court acknowledged that Mr. Chapman had been out of custody for 30 days and had not contacted the victim, but the court also noted that half of that time he was still on parole for his unlawful use of a weapon by a felon conviction, and would not want any parole violations. The court found that it was "problematic" that Mr. Chapman was alleged to have committed these offenses while he was on parole for a felony offense.

¶ 12    The court found that the State had proven by clear and convincing evidence that Mr. Chapman committed the felony offenses of aggravated battery and aggravated domestic battery. The court found that Mr. Chapman posed a real and present threat to the safety of any person or the community and there were no conditions or combination of conditions of pretrial relief that could mitigate that threat. The court therefore remanded Mr. Chapman to the custody of the Cook County Sheriff while the case was pending for trial.

¶ 13    Mr. Chapman filed a timely notice of appeal from the circuit court's order. We find that we have jurisdiction to consider the merits of this appeal. See 725 ILCS 5/110-6.1(j) (West 2022); Ill. S. Ct. R. 604(h)(1)(iii) (eff. Sept. 18, 2023).

¶ 14                                II. ANALYSIS

¶ 15    On appeal, Mr. Chapman contends that he was denied an opportunity for a fair hearing where the State did not tender the surveillance video or a summary of the video prior to the hearing. He also contends that the State failed to meet its burden by proving by clear and convincing evidence that the proof was evident or the presumption great that Mr. Chapman committed the offenses charged, that Mr. Chapman was a real and present threat to any person or the community, and that there were no less restrictive means to mitigate that threat.

¶ 16    Under the Act, we presume that all defendants are entitled to pretrial release. 725 ILCS 5/110-2(a) (West 2022). The State has the burden of proving at a hearing that a defendant should be denied pretrial release. 725 ILCS 5/110-2(a), 110-6.1 (West 2022). To meet its burden, the State must prove by clear and convincing evidence that: (1) the proof is evident or the presumption great that the defendant has committed an offense that qualifies for pretrial detention; (2) the defendant poses a real and present threat to the safety of any person or persons in the community based on the specific and articulable facts of the case; and (3) no condition or combination of conditions of

pretrial release can mitigate the real and present threat to the safety of any person or persons in the community, based on the specific and articulable facts of the case. 725 ILCS 5/110-6.1(e) (West 2022).

¶ 17                                    A. Surveillance Video

¶ 18    Mr. Chapman first contends, relying on section 6.1(f)(1) of the Code (725 ILCS 5/110-6.1(f)(1) (West 2022)), that the State was required to tender the surveillance video or a summary of its contents to the defense prior to the hearing. That section provides:

> "Prior to the hearing, the State shall tender to the defendant copies of the defendant's criminal history available, any written or recorded statements, and the substance of any oral statements made by any person, if relied upon by the State in its petition, and any police reports in the prosecutor's possession at the time of the hearing." *Id.*

Mr. Chapman acknowledges that the statute does not specifically list surveillance videos, but urges us to broadly construe the statute, maintaining that the statute was intended to allow the defense a more robust opportunity to prepare for a detention hearing than that provided by the previous law. He asserts that we should not read the items listed in the statute as an exhaustive list because that would allow the State to improperly benefit by keeping information to itself.

¶ 19    The State responds that Mr. Chapman is asking this court to inject language into the statute that was not provided by the legislature. The State maintains that the surveillance video does not fall within any of the categories listed in the statute and this court may not modify the statute by creating a new category. The State also points out that section 110-6.1(f)(2) allows the State to rely on "reliable information," in its proffer, which includes surveillance videos.

¶ 20    At the hearing, when the ASA referenced the surveillance video, defense counsel interjected that she had not seen the video. The ASA responded that she did not have the video,

but stated that she tendered a supplemental report that contained a summary of the surveillance video. Defense counsel responded that the only thing she had was "a line that says an officer reviewed surveillance video. Just below that, a short statement that my client allegedly made, and then said that the video corresponds with that statement." The ASA again represented that she had tendered everything in her possession that was relied upon for charging. The ASA later stated regarding the video: "That surveillance video is in police custody, and it was reviewed by felony review prior to these charges."

¶ 21    Section 110-6.1(f)(1) is clear that the State is required to tender only reports and information in its possession if relied upon by the State in its petition. In this case, the ASA represented that the video was in police custody, and not in the possession of the State. The ASA also represented that she tendered a summary of the video contents to defense counsel prior to the hearing. Although Mr. Chapman now argues that the summary was inadequate, he does not allege, and the record does not reveal, that the State had anything else in its possession that it failed to tender. While we encourage the State to diligently comply with the mandates of section 110-6.1(f)(1), we find no error here.

¶ 22                             B. The State's Burden

¶ 23    Mr. Chapman next contends that the State failed to meet its burden to prove by clear and convincing evidence that the proof was evident or the presumption great that Mr. Chapman committed the offenses charged. We note that Mr. Chapman does not contest that he was charged with a detainable offense under the Act (725 ILCS 5/110-6.1(a)(1) (West 2022)). Mr. Chapman did not address this issue in his memorandum, but instead relies on the arguments raised in his notice of appeal. In his notice of appeal, Mr. Chapman noted that he was originally charged with a misdemeanor in this case. The misdemeanor complaint did not allege any strangulation or contact

with the neck of the victim. The State eventually dismissed the misdemeanor charge and later filed a felony complaint. Mr. Chapman argued that the State failed to support either aggravated domestic battery charge at the hearing.

¶ 24     Mr. Chapman contended that the Chicago Police Incident Report also did not include any allegation of strangulation and the victim did not allege that Mr. Chapman made contact with her neck until speaking with police almost a month after the incident. He further asserted that the State did not proffer that any of the witnesses observed any type of visible injury to the victim's neck. The officer who responded to the scene did not note any "redness" to the victim's neck and the State did not proffer any medical records to support the allegation of strangulation or neck injury.

¶ 25     With regard to permanent disfigurement, Mr. Chapman asserted that the initial misdemeanor complaint alleged only that Mr. Chapman caused "minor lacerations" when he struck the victim with "closed fists." He contended that the State did not demonstrate that the victim contemporaneously alleged that Mr. Chapman bit her cheeks and the responding officers did not mention bite marks. Mr. Chapman further asserted that the State failed to produce any photographs of the bite marks or independent eyewitness statements regarding permanent scarring.

¶ 26     The Act does not establish a standard of review for orders granting, denying, or setting conditions on pretrial release. We generally afford great deference to the trial court's factual determinations and will reverse them only if they are against the manifest weight of the evidence. *People v. Rodriguez*, 2023 IL App (3d) 230450, ¶ 8. The trial court's ultimate decision to detain or not, however, is reviewed for an abuse of discretion. *People v. Inman*, 2023 IL App (4th) 230864, ¶ 10 (citing *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9); *People v. Whitmore*, 2023 IL App (1st) 231807, ¶ 18. An abuse of discretion occurs when the trial court's decision is

arbitrary, fanciful, or unreasonable, or when no reasonable person would agree with the position adopted by the trial court. *Simmons*, 2019 IL App (1st) 191253, ¶ 9.

¶ 27    In this case, the court heard the State's proffer, which stated that Mr. Chapman had physically attacked the victim in a public area, causing her significant injuries. Defense counsel made the same arguments regarding the allegations in the prior misdemeanor charge that Mr. Chapman made in his notice of appeal. The court found that Mr. Chapman's attack was "very brazen" and "extremely troubling." The court stated that even if what defense counsel argued was true and that Mr. Chapman did not grab the victim by the neck, but "grabbed her by her hair and pulled her out of line or something, that's pretty bold in an airport to do to someone and troubling to the court." The court also noted that Mr. Chapman was on parole for his unlawful use of a weapon conviction at the time of the alleged offenses. The court found that it was "problematic that while on parole for a felony offense charge, he was charged and accused of this offense."

¶ 28    The State proffered that the allegations were supported by eyewitness statements, including from the victim, and video surveillance. The ASA represented that the victim had "visible lacerations about her entire face" and was taken to the hospital after the incident where she was treated for "multiple lacerations and bite marks to her face, abrasions to her neck, [and] bite wounds to her abdomen." At this stage, the State does not have to prove the elements of the charged offense beyond a reasonable doubt. *Stock*, 2023 IL App (1st) 231753, ¶ 13. Here, we find that the circuit court's finding that the proof was evident or that the presumption was great that Mr. Chapman committed the charged offenses was not against the manifest weight of the evidence.

¶ 29    The next consideration is whether the State proved by clear and convincing evidence that Mr. Chapman posed a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case. 725 ILCS 5/110-6.1(e)(2) (West

2022). In his notice appeal, Mr. Chapman argued that he did not have any prior convictions for domestic battery, aggravated battery, or even simple battery, and that the State did not allege any violent psychological or social history. He also contended that there was "serious doubt" as to whether he actually strangled or bit the victim and the State "[a]t most" alleged that he committed misdemeanor domestic battery. He also points out that because of the procedural history of this case, he was out of custody, off parole, and not under the supervision of the court for almost a month and did not threaten or attempt to threaten the safety of the victim or anyone else during that time.

¶ 30    First, as we have already found, the court's finding that the State met its burden of showing the proof was evident or the presumption was great that Mr. Chapman committed the charged offenses was not against the manifest weight of the evidence. Therefore, the State did more than allege that he committed "[a]t most" misdemeanor battery. In addition, the court addressed Mr. Chapman's argument that he was out of custody for almost a month and did not attempt to threaten the safety of the victim during that time. As the ASA represented, Mr. Chapman was on parole for his unlawful use of a weapon by a felon charge until September 15, 2023. The hearing occurred on September 29, 2023. Therefore, Mr. Chapman was out of custody and off parole for only a period of two weeks. The court found that Mr. Chapman "surely did not want any parole violations." Moreover, the State proffered that Mr. Chapman had previously been arrested for a domestic dispute involving this same victim. We therefore find that the circuit court's finding that Mr. Chapman posed a real and present threat to the safety of any person or persons or the community was not against the manifest weight of the evidence.

¶ 31    Finally, the third element was that the State was required to prove that "no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article can mitigate

(i) the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." 725 ILCS 5/110-6.1(e)(3)(i) (West 2022). In his notice of appeal, Mr. Chapman repeated his arguments regarding the period of time he spent out of custody after the misdemeanor charges were dismissed and the felony complaint was filed. Mr. Chapman maintains that court-ordered conditions such as GPS monitoring, house arrest, or a no contact order would be sufficient to mitigate any threat Mr. Chapman poses to the victim or the community.

¶ 32    Section 110-5 outlines factors for the court to consider in determining the conditions of release. These factors include the nature and circumstances of the offense charged, the weight of the evidence against the defendant, and whether the defendant was on parole at the time of the offense. 725 ILCS 5/110-5(a)(1), (2), (3)(B) (West 2022). In addition, subsection (a)(6) provides additional factors for the court to consider where, as here, the defendant is charged with aggravated domestic battery. In such circumstances, the court can also consider, *inter alia*, whether the person has access to deadly weapons or a history of using deadly weapons and whether the alleged incident involved physical injury or strangulation. 725 ILCS 5/110-5(a)(6)(F), (H) (West 2022). In this case, the circuit court commented on Mr. Chapman's conviction for unlawful use of a weapon noting his access to deadly weapons even when he was not entitled to possess a weapon. The alleged offense also involved physical injury and strangulation. In its written detention order, the court found that no condition or combination of conditions could mitigate the threat Mr. Chapman posed because of his extensive criminal history including prior arrests for domestic battery, and the fact that he was on parole at the time of the offense. Therefore, the record is clear that there were sufficient facts to support the circuit court's conclusion that the State proved by clear and convincing evidence that no condition or combination of conditions would mitigate the

real and present threat to the safety of any person or persons or the community and we find no abuse of discretion.

¶ 33                                    III. CONCLUSION

¶ 34    For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 35    Affirmed.