2026 IL App (1st) 260828-U

FIRST DISTRICT,
SIXTH DIVISION
June 29, 2026

No. 1-26-0828B

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) | No. 24 CR 0519001 |
| MAURICE NORFLEET, | ) ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) ) | Patrick Coughlin, Judge Presiding. |

_____

JUSTICE GAMRATH delivered the judgment of the court.
Presiding Justice C.A. Walker and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1      *Held*:    We affirm the circuit court's order for continued detention and denial of the defendant's motion for relief.

¶ 2      On a late morning in April 2024, the victim Destiny Young was driving on a residential street in Lansing, Illinois, when a stranger, defendant Maurice Norfleet, shot at her vehicle four times, striking a rear window once. Norfleet was subsequently charged with attempted first-degree murder, aggravated discharge of a firearm, aggravated unlawful use of a weapon, and unlawful use or possession of a weapon by a felon. Upon the State's motion, the trial court ordered Norfleet

to be detained before trial. Norfleet filed a motion for relief from pretrial detention, which the trial court denied. We affirm.

¶ 3                                                 BACKGROUND

¶ 4         Norfleet was arrested on April 29, 2024, and charged and indicted on three counts of attempted first-degree murder, two counts of aggravated discharge of a firearm, one count of aggravated unlawful use of a weapon, and one count of unlawful use or possession of a weapon by a felon. On April 30, 2024, the State filed a petition for a pretrial detention hearing, alleging that Norfleet committed the eligible offense of attempted first-degree murder, posed a real and present threat to the safety of any person or the community, and that no conditions of release could mitigate that threat. See 725 ILCS 5/110-6.1(a)(4) (West 2022). A hearing was held the same day.

¶ 5         According to the State's proffer, Destiny Young was driving north on Chicago Avenue in Lansing around 11:20 a.m. on April 29, 2024. After realizing she had forgotten something at a friend's house, she turned onto Flanigan Drive to make a three-point turn. As she turned left, she heard a "loud pop" she first believed was a firework. Facing west, she saw a man, later identified as Norfleet, standing in front of 2985 Flanigan Drive with both arms extended, pointing a firearm at her. She described the weapon as a "firearm that had a single handle and was larger than a standard handgun." Norfleet fired another shot, which missed. As Destiny reversed and turned south, he fired a third round, shattering the rear passenger window and lodging in a stool she was carrying in the back seat. She heard a fourth gunshot as she drove away and returned to her friend's home to call police.

¶ 6         Officers canvassing the area encountered Norfleet outside his home at 2977 Flanigan Drive, next door to where Destiny saw him standing. Destiny identified him on scene as the shooter. Police recovered spent 7.62x39mm casings in front of 2977 and 2985 Flanigan. A search

warrant at Norfleet's residence uncovered thirteen firearms, including an "AK-47 style pistol" loaded with 7.62x39mm rounds just inside the front door. A fired round matching the ammunition was recovered from Destiny's vehicle. Norfleet had prior felony drug convictions in 2008 and 2006.

¶ 7     The State argued that Norfleet committed the eligible offense of attempted first-degree murder and posed a real and present threat because the shooting was "seemingly completely random" and occurred in broad daylight. The State asserted Norfleet could "walk onto any street at any point" with a firearm he was prohibited from possessing and "just shoot at people," as he did here. The State maintained that GPS or electronic monitoring would not limit his access to firearms and would leave him with unmonitored movement for at least two days to contact Destiny or other potential victims.

¶ 8     Defense counsel argued that the police reports and Destiny's descriptions contained "multiple different discrepancies," and that additional physical evidence, such as gunshot residue testing results or video from nearby doorbell cameras, was lacking. Counsel asserted the firearms belonged to Norfleet's wife, who had a Firearm Owners Identification (FOID) and Concealed Carry License (CCL). He argued Norfleet was not a danger and that less restrictive conditions could mitigate any risk he presents because he had lived in Illinois his entire life, had no violent criminal history, was employed, 48 years old, married with a family, and recently called police about crime in the neighborhood after being robbed.

¶ 9     The circuit court denied pretrial release, finding the "proof is evident and the presumption is great" that Norfleet committed attempted first-degree murder; that he "poses a real and present threat to the safety of any person or the community based on the specific articulable facts of the

case"; and no less restrictive conditions of release would suffice to mitigate the threat he posed. In a written order, the court ordered Norfleet detained pending trial.

¶ 10    Norfleet filed a notice of appeal on May 7, 2024, and an amended notice on May 13, 2024. On May 23, 2024, we granted his motion to dismiss the appeal as premature.

¶ 11    On June 5, 2024, Norfleet filed a motion for relief under Illinois Supreme Court Rule 604(h), repeating the arguments made at the detention hearing. He also argued that being "charged with violent felonies alone is insufficient" to establish that no conditions could mitigate the risk. An amended motion followed on June 11, 2024. Although there is no hearing transcript, the record demonstrates the court found continued detention necessary on June 5, June 12, July 10, August 9, and September 3, 2024.

¶ 12    On October 4, 2024, Norfleet filed a motion to "Readdress the Necessity of Continued Detention," again raising prior arguments and attempting to distinguish his case from other authority. The court again found continued detention necessary on October 7, November 18, and December 6, 2024, and on January 13, and February 11, 2025.

¶ 13    On May 20, 2025, defense counsel withdrew, and Norfleet elected to proceed *pro se*. He filed a *pro se* Motion to Dismiss the Indictment on June 11, 2025, and a Motion to Quash Arrest and Suppress Evidence on July 28, 2025. On October 10, 2025, counsel again represented him. The court found continued detention necessary on October 10 and November 7, 2025, and on January 7, February 11, and March 27, 2026.

¶ 14    On March 27, 2026, Norfleet filed another motion for relief, again asserting the State failed to meet its burden of proof for all three prongs required for detention. On April 24, 2026, Norfleet filed an amended motion, arguing for the first time that the State "violated the disclosure

requirements of the Pre-Trial Fairness Act by failing to disclose the substance of statements which they relied upon" at the initial detention hearing.

¶ 15 At the April 27, 2026 hearing on the amended motion, defense counsel first addressed the alleged disclosure violation, and then repeated the earlier arguments: that the State failed to establish by clear and convincing evidence that the proof was evident or the presumption great that he committed attempted first-degree murder, that Norfleet's nonviolent criminal history undercut any finding of dangerousness, and that less restrictive conditions could mitigate any risk.

¶ 16 The State responded that all discovery available at the initial hearing had been tendered and defense counsel had agreed he was ready to proceed. The State emphasized Destiny's identification of Norfleet, the thirteen firearms found in Norfleet's home, and the matching shell casings and ammunition recovered from the home. It argued that the random nature of the shooting showed dangerousness, and that GPS or monitoring would not prevent Norfleet from acquiring or using firearms to randomly shoot at other people near his home.

¶ 17 The trial court rejected the alleged disclosure violation, noting that "whatever the State had, they had tendered as far as reports." The court then found the State met all three detention prongs and therefore denied Norfleet's motion for relief. The court relied on Destiny's identification and ballistics evidence for the first prong and characterized the shooting as an "unprovoked, random" attack showing danger to "anybody passing by the residence." It concluded that home confinement would not lessen the danger and denied the motion. Norfleet timely appealed.

¶ 18                                    ANALYSIS

¶ 19 The State charged Norfleet with attempted first-degree murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2024)), which is a detainable offense. 725 ILCS 5/110-6.1(a)(1.5), (7). Norfleet argues that the State failed to prove by clear and convincing evidence that the proof was evident

or the presumption great that he committed attempted first-degree murder, that he posed a real and present threat to any person or the community, and that no less restrictive conditions could mitigate that threat. We disagree.

¶ 20    Under the Pretrial Fairness Act (Act), "[a]ll defendants shall be presumed eligible for pretrial release." Pub. Act 104-417, § 1075 (eff. Aug. 15, 2025) (amending 725 ILCS 5/110-6.1(e)). A court may order detention when the State establishes, by clear and convincing evidence that: (1) the proof is evident or the presumption great that a defendant has committed a detainable offense; (2) the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community based on the specific, articulable facts of the case; and (3) no condition or combination of conditions can mitigate that threat. 725 ILCS 5/110-6.1(e). Clear and convincing proof requires more than a preponderance of the evidence but less than proof beyond a reasonable doubt. *People v. Clay*, 361 Ill. App. 3d 310, 322 (2005). Where, as here, the State proceeds by proffer, our standard of review is *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54.

¶ 21    As to the first prong, we reject Norfleet's argument that the alleged inconsistencies in Destiny's descriptions made the State's evidence insufficient. The proffer showed that Destiny attempted to turn her vehicle around on a residential street in broad daylight when Norfleet, who did not know her but had apparently been robbed recently, began shooting at her. Before Destiny could drive away, Norfleet fired four shots, one of which shattered her rear passenger window. During the shooting, Destiny saw Norfleet standing outside a home next to his own with both arms extended and a gun in hand. Police later found Norfleet in front of his home, recovered spent shell casings in front of both homes, recovered a spent round from Destiny's vehicle, and recovered thirteen firearms from Norfleet's home, including an "AK-47 style pistol" loaded with ammunition matching the casings and round recovered. This evidence was sufficient to show by clear and

convincing evidence that the proof was evident or the presumption great that Norfleet committed attempted first-degree murder. The inconsistencies Norfleet cites, such as the clothing Norfleet may have worn or a car he may have driven, are minor considering Destiny's same-day in-person identification and corroborating ballistics evidence.

¶ 22    Norfleet next argues the State failed to establish that he posed a real and present threat to the safety of the community and that no conditions could mitigate the threat he posed. Norfleet points to his age, family ties, and lack of prior violent convictions. But as courts have recognized, "the nature and circumstances of the offense charged is the *prime* consideration in determining the conditions of release, if any ([725 ILCS 5/] §110-5(a)(1)), and in denying pretrial release (*id.* § 110-6.1(a)), including in making the dangerousness determination (*id.* § 110-6.1(g)(1))." (Emphasis in original.) *People v. Carpenter*, 2024 IL App (1st) 240037, ¶ 14.

¶ 23    Here, Norfleet's conduct demonstrates a quick temper, a willingness to employ serious violence based on an unfounded perceived threat, and a disregard for the surrounding community. The finding of dangerousness was not grounded solely in the charged offense but in the circumstances surrounding it: Norfleet opened fire on a complete stranger in the middle of the day on a residential street. See 725 ILCS 5/110-6.1(g). The proffered evidence amply supports the conclusion that he poses a real and present threat to the safety of the community.

¶ 24    The record also supports the conclusion that no alternative measures, including electronic home monitoring or GPS, could adequately mitigate that danger. The shooting was an intentional act directed at a stranger who simply turned her vehicle around near his home. The random nature of the gunfire endangered not only Destiny but anyone nearby. As the circuit court recognized, confining Norfleet to his home would not meaningfully reduce the danger when he was alleged to have been standing steps from that same home when he opened fire. Defense counsel's assertion

that the thirteen firearms belonged solely to Norfleet's wife, who had a valid FOID and CCL, only underscores how easily he could access firearms despite being legally prohibited from possessing them. And as noted in *People v. Thomas*, 2024 IL App (4th) 240248, ¶ 26, electronic monitoring does not eliminate serious concerns about noncompliance, particularly where the potential consequences are grave.

¶ 25 Finally, we reject Norfleet's claim that the State violated its disclosure obligation at the initial detention hearing. Under the Act, the State must tender before the hearing "copies of the defendant's criminal history available, any written or recorded statements, and the substance of any oral statements made by any person, if relied upon by the State in its petition, and any police reports in the prosecutor's possession at the time of the hearing." 725 ILCS 5/110-6.1(f)(1). Norfleet asserts that the State failed to disclose the substance of statements relied upon, but he identifies neither the statements nor authority supporting his claim beyond citing the statute.

¶ 26 In *People v. Ramyyeh,* 2024 IL App (1st) 240299, we reaffirmed that the State is required to tender only the reports and information in its possession and relied upon in filing the petition. *Id.* ¶ 13 (citing *People v. Chapman*, 2024 IL App (1st) 231879-U, ¶ 21; *People v. Morales*, 2023 IL App (2d) 230334, ¶ 8). There, the State was not obligated to tender video statements not yet in its possession, and its summaries of those statements sufficed at the detention stage. *Id*. ¶ 17.

¶ 27 Likewise, nothing indicates the State possessed undisclosed recorded statements. Before the hearing, defense counsel acknowledge receipt of "the LEADS and criminal history, the petition for pretrial detention hearing, *** two different felony complaints" and one six-page report from Lansing police. The State indicated that was the only report it had, and defense counsel confirmed he was ready to proceed with the hearing. The detention hearing occurred one day after the shooting, well before full discovery could reasonably be complete. The Act recognizes this reality,

stating: "The pre-trial detention hearing is not to be used for purposes of discovery, and the post arraignment rules of discovery do not apply." 725 ILCS 5/110-6.1(f)(4). The record shows the State complied with its disclosure obligations here.

¶ 28    Based on our review of the record, we find the circuit court correctly denied Norfleet's motion for relief and therefore affirm the order denying him pretrial release.

¶ 29                                    CONCLUSION

¶ 30    For the foregoing reasons, we affirm the order of the circuit court of Cook County.

¶ 31    Affirmed.