2024 IL App (4th) 240248

NO. 4-24-0248

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 29, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Jersey County |
| CHRISTOPHER B. THOMAS, | ) | No. 24CF7 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Allison S. Lorton, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court, with opinion.
Presiding Justice Cavanagh and Justice Harris concurred in the judgment, with opinion.

**OPINION**

¶ 1 Defendant Christopher B. Thomas appeals from the circuit court's February 1, 2024, order denying pretrial release pursuant to the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), as amended by Public Act 101-652 (eff. Jan. 1, 2023) (commonly referred to as the Pretrial Fairness Act). On appeal, he argues that the State failed to meet its burden of proving by clear and convincing evidence that (1) the proof is evident or the presumption great that he committed the offense charged; (2) he posed a real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case; and (3) no condition or combination of conditions could mitigate the real and present threat posed or his willful flight. Defendant further argues that the court erred in its determination

that no condition or combination of conditions would reasonably ensure his appearance for later hearings or prevent him from being charged with a subsequent felony or Class A misdemeanor.

¶ 2 We affirm.

¶ 3 I. BACKGROUND

¶ 4 On January 30, 2024, defendant was charged by information with unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2022)), specifically, the possession by a person convicted of a felony of "a Winchester 22 lever action rifle and a Remington 12-gauge slug gun, an enhanced Class 3 felony. The incident allegedly took place on January 27, 2022.

¶ 5 On February 1, 2024, the State filed a verified petition to deny pretrial release, arguing that the charged offense was detainable, that defendant's release posed a clear and present threat to individuals or the community, and that no condition or combination of conditions could mitigate the real and present threat posed by defendant. The State attached a pretrial detention report, which identified defendant as a threat, a copy of trail camera photographs showing defendant in possession of the firearms, and a probable cause statement authored by Jersey County Sheriff's Office Detective Marshall Lewis describing the incident of January 27, 2022.

¶ 6 At the February 1, 2024, hearing on the State's verified petition, the State called Detective Lewis to the stand, who testified as follows:

"It was reported that [defendant] had broken [into] his mother and step-father's house. Further broke [into] a safe which had firearms. Gained access to those firearms and [proceeded] fire several shots inside of the residence he was staying in at the time into the bed, into appliances. So much so that his girlfriend at the time was in fear enough that she requested that her son come pick her up at the end of

- 2 -

the driveway. She left the residence that night that this all occurred. She was still worried about [defendant] and his situation and having the firearms that she contacted mother and step-dad and advised that hey, [defendant] is down there at the trailer. He's got guns. Step-dad gets to the property and sees [defendant] with a firearm in his hand. Talked him down from some of the things he was saying. Step-dad goes into the trailer with him to try to calm him down a little bit and noticed two more firearms that were his taken from the safe laying there on the bed. He took possession of those firearms at the time."

¶ 7 Detective Lewis further verified that a trail camera in the vicinity had captured defendant and his stepfather at the trailer and the stepfather taking the guns from defendant.

¶ 8 Detective Lewis detailed at least eight incidents between January 2022 and the date of the hearing wherein defendant made threats to Angie Blasa and Danny Law, as well as other prior arrests for assault, battery, drug-related crimes, and weapons crimes, and eight other calls relating to defendant's mental welfare. According to Detective Lewis, in August 2023, defendant threatened Blasa through text messages and had also shown up at her residence with what was believed to be a firearm and would not leave. Lewis also testified that defendant was the primary suspect in a January 2024 investigation (Jersey County case No. 24-CF-466) concerning the January 16, 2024, aggravated discharge of a firearm into Blasa's residence, where she was sleeping.

¶ 9 According to the pretrial detention report, defendant made statements that he had a firearm and that he was going to kill Blasa and/or those she cares about. Detective Lewis acknowledged that charges had not yet been recommended against defendant for the 2024 incident but explained that, before referring charges to the state's attorney, "I would still be looking for

additional pieces of evidence and some of the evidence that I'm investigating and still continuing to collect just take[s] time for me to get some of those items—when you're dealing with phones and subpoenaed records."

¶ 10　　　　　Following arguments, the circuit court granted the State's motion and ordered defendant detained. The court initially found that defendant had committed a detainable offense and then concluded that defendant posed a real and present threat. On the latter point, the court concluded that defendant "poses a real and present threat to the safety of any persons or the community based upon specific articulable facts of the case, by conduct which may include not limited to forceable felony, obstruction of justice, intimidation or injury as defined by the statute and denial of release is necessary to prevent fulfillment of the threat upon which the charge is based." The court explained,

> "I do believe that I have the discretion to consider the facts and circumstances of this timeframe which has brought us here today. I have specific articulable facts and threats of violence based upon the proffer of Detective Lewis from 2023 and up to most recently which may involve shots being fired at this residence being Angie Blasa and her current—those in her household. We have a period of numerous—since 2022 this charge defense police contacts with respect to mental health concerns, threats of violence, threats of abuse. I have a criminal history that involves charges, possession of methamphetamine, burglary, driving under the influence of alcohol—the current charge of unlawful possession of weapon by felon. I do think it's within my discretion to look at the totality of the circumstances, in particular[] this timeline and the escalation of the events that has brought us from where this original charge was filed to today."

¶ 11    Accordingly, the circuit court found that defendant constituted a threat to the safety of those individuals listed in the State's proffer and

"at this point in time there are no set of conditions that could mitigate the real and present threat that [defendant] has based upon the proffer, specifically the testimony of Detective Lewis regarding the numerous police contacts, mental health concerns, substance abuse concerns and for this Court possession of—on multiple occasions and access to and possibly using dangerous weapons to fulfill threats that have been made and conveyed to the Court."

¶ 12    Moreover, the circuit court added, "a no stalking no contact order has been filed today with respect to Angie Blasa. I do feel that based upon facts and circumstances offered by *** Detective Lewis *** that is also appropriate for this Court to take into consideration when I'm considering the threat posed by this defendant."

¶ 13    The circuit court's written order, entered that same day, found that the State had established by clear and convincing evidence that defendant was a clear and present threat and that no conditions or combination of conditions set forth in subsection (b) of section 110-10 of the Code could mitigate the threat posed by defendant. 725 ILCS 5/110-10(b) (West 2022). The court's written order further checked the following boxes under the section of the order that stated, "The Court's reason(s) for concluding the Defendant should be denied pre-trial release" were based on the following factors: (1) the nature and circumstances of the offense(s) charged; (2) that defendant's prior criminal history is indicative of violent, abusive, or assaultive nature; (3) the identity of any person(s) to whose safety defendant is believed to pose a threat, and the nature of the threat; (4) any statement(s) being made by, or attributed to defendant, together with circumstances surrounding them; and (5) defendant is known to possess or have access to weapons.

The court further stated that it "relie[d] upon further allegations and entry of no contact order this date, 24OP7, by Angie Blasa, specific identifiable nature of subsequent[ ] threats and ongoing criminal investigations."

¶ 14　　　　　Defendant filed his notice of appeal pursuant to Illinois Supreme Court Rule 604(h) (eff. Dec. 7, 2023) on February 1, 2024, raising the following issues: (1) the State failed to meet its burden of proving by clear and convincing evidence that the proof is evident or the presumption great that defendant committed the offense(s) charged; (2) the State failed to meet its burden of proving by clear and convincing evidence that defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case; (3) the State failed to meet its burden of proving by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case, or defendant's willful flight; and (4) the circuit court erred in its determination that no condition or combination of conditions would reasonably ensure the appearance of defendant for later hearings or prevent defendant from being charged with a subsequent felony or Class A misdemeanor. No further explanations or details were offered. Defendant's subsequent Rule 604(h)(2) memorandum (Ill. S. Ct. R. 604(h)(2) (eff. Dec. 7, 2023)), however, only addressed the issue of whether "no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community."

¶ 15　　　　　This appeal followed.

¶ 16　　　　　　　　　　　　　　　II. ANALYSIS

¶ 17　　　　　On appeal, defendant challenges the February 1, 2024, detention order, which we review under an abuse of discretion standard. *People v. Morgan*, 2024 IL App (4th) 240103, ¶ 35;

*People v. Inman*, 2023 IL App (4th) 230864, ¶¶ 10-11. "[I]n reviewing the circuit court's ruling for an abuse of discretion, we will not substitute our judgment for that of the circuit court, merely because we would have balanced the appropriate factors differently." (Internal quotation marks omitted.) *Inman*, 2023 IL App (4th) 230864, ¶ 11. " 'An abuse of discretion occurs when the [trial] court's decision is "arbitrary, fanciful or unreasonable" or where "no reasonable person would agree with the position adopted by the [circuit] court." ' " *Id.* ¶ 10 (quoting *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9, quoting *People v. Becker*, 239 Ill. 2d 215, 234 (2010)).

¶ 18    The Code abolishes traditional monetary bail and provides defendants with a presumption in favor of pretrial release. 725 ILCS 5/110-1.5, 110-2(a) (West 2022). To detain a defendant pretrial, the State has the burden of proving by clear and convincing evidence that (1) "proof is evident or the presumption great" that the defendant committed a detainable offense, (2) the defendant "poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case," and (3) no condition or combination thereof can mitigate the threat the defendant poses. *Id.* § 110-6.1(e)(1)-(3).

¶ 19    Here, we focus on the third requirement. We note that although defendant indicated other issues in his notice of appeal, these issues were not elaborated on by defendant's appellate memorandum. The arguments as stated in the notice of appeal are made cursorily and without any explanation of the grounds for seeking reversal. We will, therefore, confine our discussion to the adequacy of the conditions of pretrial release to mitigate the threat defendant poses and find that defendant did not carry his burden respecting the remaining issues listed in his notice of appeal. See, *e.g.*, *People v. McKenzie*, 2024 IL App (4th) 231063-U, ¶ 16.

¶ 20    Turning to the issue of whether the State failed to prove by clear and convincing evidence that no condition or combination of conditions can mitigate the threat the defendant

poses, defendant raises two arguments. First, he asserts that the circuit court's written order is deficient and fails to comply with the requirements of section 110-6.1(h)(1). 725 ILCS 5/110-6.1(h)(1) (West 2022). Relatedly, he argues that the court's oral pronouncements cannot be considered in determining whether the court's order satisfied section 110-6.1(h)(1). *Id.* Second, defendant argues that, even looking at the court's oral pronouncements, the court failed to articulate sufficient grounds to explain why alternatives to detention could not work.

¶ 21 On defendant's first point, we note that all appellate court districts have now recognized that a circuit court's oral pronouncements can be considered in conjunction with its written explanation in assessing the court's compliance with section 110-6.1(h)(1). See, *e.g.*, *People v. Davis*, 2023 IL App (1st) 231856, ¶ 34; *People v. Andino-Acosta*, 2024 IL App (2d) 230463, ¶ 15; *People v. Hodge*, 2024 IL App (3d) 230543, ¶¶ 11-12; *McKenzie*, 2024 IL App (4th) 231063-U, ¶ 17; *People v. Odehnal*, 2024 IL App (5th) 230877-U, ¶ 11. Indeed, given that the point of requiring a written finding is to give notice of the reasons for the court's findings for appellate review, the same purpose is served when the court's findings are stated orally. *In re Madison H.*, 215 Ill. 2d 364, 374-75 (2005) (concerning parental unfitness findings). Where the hearing transcripts and written order " 'provide an equal opportunity to review the validity of the finding on appeal,' " it is sufficient to comply with section 110-6.1(h)(1)'s "written finding" requirement. *Hodge*, 2024 IL App (3d) 230543, ¶ 11 (quoting *Madison H.*, 215 Ill. 2d at 375). We therefore decline defendant's suggestion that we should limit our consideration of the circuit court's reasoning solely to its written findings.

¶ 22 Turning our attention to the written findings in the February 1, 2024, detention order, these findings outline the circuit court's justification for determining that pretrial release should be denied: the nature and circumstances of the offense charged; the violent, abusive, or

assaultive nature of defendant's prior criminal history; the nature of the threat to an identifiable individual, namely Blasa; and defendant's known possession of, or access to, weapons. Moreover, it considered the no contact order obtained that same day by Blasa, who had been the target of defendant's threats. These are proper written findings because they are appropriate factors for the court's consideration of defendant's dangerousness under section 110-6.1(g)(1)-(9) and the question of what conditions factors might mitigate the danger if defendant were released under section 110-5(a)(1)-(7). See 725 ILCS 5/110-5(a)(1)-(7), 110-6.1(g)(1)-(9) (West 2022). Considering the entire record before the court, we do not find an abuse of discretion. *Inman*, 2023 IL App (4th) 230864, ¶¶ 10-11.

¶ 23　　　Similarly, in its oral ruling, the circuit court made express findings concerning why the real and present threat posed by defendant could not be mitigated. Specifically, the court stated:

> "I find that the defendant does pose a threat to the safety of those listed in this proffer and therefore *at this point in time there are no set of conditions that could mitigate the real and present threat* that [defendant] has based upon the proffer, specifically the testimony of Detective Lewis regarding the numerous police contacts, mental health concerns, substance abuse concerns and for this Court possession of—on multiple occasions and access to and possibly using dangerous weapons to fulfill threats that have been made and conveyed to the Court." (Emphasis added.)

¶ 24　　　The circuit court further stated, "I do think it's within my discretion to look at the totality of the circumstances, in particular[] this timeline and the escalation of the events that has brought us from where this original charge was filed to today." The court's statements, viewed

with its written findings, provide sufficient explanation of its grounds for ruling on the issue of mitigation; we find no abuse of discretion in the court's conclusion.

¶ 25 We note that defendant has criticized the circuit court's failure to specifically address or refute his suggestion that electronic monitoring or home confinement might be reasonable conditions to mitigate the threat. Defendant treats electronic monitoring as a condition which is sufficient until proven otherwise; we see no support for that specific proposition in the law.

¶ 26 Where available, electronic monitoring may well be a useful tool to guard against misconduct by a defendant who is released on conditions, but this does not mean that electronic monitoring addresses every defendant's potential dangerousness in every case. Electronic monitoring that is not linked to a geographic limitation provides extremely limited information: just the defendant's location. When coupled with a geographic limitation such as home confinement, electronic monitoring can help alert pretrial officers to a potential violation of that geographic limitation. But any condition of release must be appropriately measured to meet the danger presented in each case. Knowing that electronic monitoring might *detect* a failure to comply with conditions of release does not diminish concerns that a particular defendant appears to present a greater risk of noncompliance, especially if the consequences of noncompliance may be grave.

¶ 27 Here, the facts presented to the circuit court gave substantial reason to be concerned that defendant presented a risk of lethal violence: prior weapons violations, prior threats aimed at a specific individual, the discharge of weapons inside a residence, and possible mental health issues underlying this history. In other words, it would be extraordinarily difficult to predict defendant's compliance with any conditions of release. Electronic monitoring offers the promise of promptly informing law enforcement if defendant violated a home confinement restriction or—

in the worst case scenario—where he was at the time he violated some other condition or made good on his threat against Blasa. It would not, however, provide much in the way of prevention of such a violation or threat, and it is reasonable to question what deterrent effect it would have when the misdeeds at issue may relate to mental illness. We do not believe that the circuit court abused its discretion in rejecting the sufficiency of electronic monitoring to guard against the potential danger posed in this case.

¶ 28 Furthermore, we do not read section 110-6.1(h) as requiring a court to specifically address each individual suggestion of conditions offered by a party in rendering its decision. Overall, the record here confirms the circuit court followed and applied the Code when deciding to detain defendant. Therefore, its decision is not arbitrary, fanciful, or unreasonable, and there was no abuse of discretion. *Inman*, 2023 IL App (4th) 230864, ¶ 10.

¶ 29 Similarly, we do not find that section 110-6.1(e)(2) requires the State to anticipate and tender in advance its explanation of why a particular condition may or may not mitigate the dangers defendant presents. See 725 ILCS 5/110-6.1(e)(2) (West 2022). As we said in *Morgan*,

> "We cannot expect the State to specifically raise and argue against every possible condition of release in every case; there must be some limiting principle. In general, it is reasonable to anticipate that the State will address conditions insofar as they relate to the charged conduct, the defendant's criminal history, the defendant's risk assessment score, and any other relevant considerations about the defendant known to the State at the hearing." *Morgan*, 2024 IL App (4th) 240103, ¶ 39.

¶ 30 As was the case in *Morgan*, "the State's central argument against the sufficiency of conditions was defendant's past misconduct, including violent misconduct occurring when defendant was on probation." *Id.* ¶ 40. Moreover, as in *Morgan*, defendant here offered various

- 11 -

options for possible conditions to mitigate the threat. Accordingly, "[i]t became the trial court's responsibility to evaluate each party's argument and evidence." *Id.* As the circuit court did in *Morgan*, the circuit court below "found the State's position to be more persuasive, as the court was concerned about defendant's continuing misconduct while on probation or pretrial release." *Id.* We find no abuse of discretion.

¶ 31                                    III. CONCLUSION

¶ 32            For the reasons stated, we affirm the circuit court's judgment.

¶ 33            Affirmed.

*People v. Thomas*, 2024 IL App (4th) 240248

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Jersey County, No. 24-CF-7; the Hon. Allison S. Lorton, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Carolyn R. Klarquist, and Deborah Israel, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Patrick Delfino and David J. Robinson, of State's Attorneys Appellate Prosecutor's Office, of Springfield, for the People. |