NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (4th) 240390-U

NO. 4-24-0390

IN THE APPELLATE COURT

FILED
May 23, 2024
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Peoria County |
| KESHAWN J. WILLIAMS, | ) | No. 24CF148 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Katherine G. P. Legge, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Justices Harris and Lannerd concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court's decision to detain defendant was not an abuse of discretion.

¶ 2    Defendant Keshawn J. Williams appeals from the circuit court's February 23, 2024, order denying his pretrial release pursuant to the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-1 *et seq.*) (West 2022)), hereinafter as amended by Public Act 101-652 (eff. Jan. 1, 2023), commonly referred to as the Pretrial Fairness Act. Defendant argues that the State failed to meet its burden of proving by clear and convincing evidence that: (1) the proof is evident or the presumption great that defendant committed the charged offense, (2) defendant posed a real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case, and (3) no condition or combination of conditions could mitigate the real and present threat posed by defendant.

¶ 3        We affirm.

¶ 4                                    I. BACKGROUND

¶ 5        Defendant was charged by information with one count of armed robbery, a Class X felony. Specifically, the information charged that on January 15, 2024, defendant, while armed with a firearm, took a cell phone from the person or presence of Angel Brendlinger by the use of force or threatening the imminent use of force. 720 ILCS 5/18-2(a)(2) (West 2022). He was later indicted on this charge.

¶ 6                      A. Petition to Deny Pretrial Release and Hearing Thereon

¶ 7        On February 23, 2024, the State filed its verified petition to deny pretrial release. A detention hearing was held the following day, at which the State proffered that, "on January 15th of this year Peoria Police responded to the alley in the 2100 block of West Lincoln on a ShotSpotter alert," and upon their arrival, they found Isaiah Sharp and Angel Brendlinger. "Brendlinger told officers that they had come to purchase a vehicle after setting up the meeting through Facebook." She explained:

> "When they arrived to the area, a male walked them down the alley to where the vehicle was allegedly located. When they arrived, a number of people got out of a waiting car with guns, and they demanded money, and one individual took a cell phone from her pocket. She said Sharp then produced his own firearm and shot one of the armed assailants. The others fled."

According to the State, the individual shot by Sharp died of his gunshot wounds.

¶ 8        According to the State, the police recovered a security video capturing the incident, showing Sharp and Brendlinger being walked to the garage by an individual.

- 2 -

"Then a number of armed individuals [got] out of a waiting SUV and [pointed] guns at Sharp and Brendlinger. It show[ed] an exchange of gunfire between Marcus Whitehead and Sharp and Marcus Whitehead [fell] to the ground. The armed assailants, all but one[,] [got] into a Jeep and [fled]. The other [ran] between two houses."

¶ 9 According to the State, the detectives spoke to the owner of the SUV the assailants got out of, who "told the detectives that he gave the vehicle to Sontarrius Williams [(hereinafter Sontarrius)] who is this defendant['s] *** brother. [The owner] had given it to *** [Sontarrius ] to fix; and *** [Sontarrius] had the key to the vehicle." Peoria police executed a search warrant at the home of defendant's brother and "found keys to the Jeep that was parked in the garage behind the house." The keys "matched the Jeep that was seen on the security video of the incident that drove away the armed assailants. Keys were also found inside the home to the maroon SUV that was used by the assailants during the incident." Officers also recovered a home security video system from Sontarrius's home, which showed defendant, along with his brother Sontarrius and Jalyn Branscumb, entering the home just minutes after the robbery.

¶ 10 The State said that Sontarrius was interviewed and "admitted to being present for the incident but said that he did not participate in the robbery." He also admitted, "that he was the person that brought Sharp and Brendlinger down the alley to the garage." Sontarrius identified Branscumb and defendant as having participated in the robbery. "He said after the shots were fired, he drove himself, Branscumb, and the defendant back to his house in the Jeep." Branscumb was also interviewed by Peoria police detectives, who told them that Sontarrius "set the whole thing up." Branscumb said he was "sitting in the rear passenger side of the maroon SUV" and that he had a gun that had been given to him by Sontarrius. Branscumb said he "didn't do anything major

during the incident. He said he just participated." He also identified defendant as one of the people who got out of the vehicle with a firearm for the robbery.

¶ 11　　　　After the State's proffer, defense counsel pointed out that defendant was "only 18 years old" and that "the evidence is very murky as to what exactly his involvement, if anything, was here." Defense counsel argued that, although "a video camera showed him with his brother and another man who were suspects in this matter walking into his brother's house," there was no verification by time stamps. Counsel also argued that no gun was found on defendant and that he "has never had any adult felonies." Although defendant had a juvenile case, it was at least five years ago, and he "successfully completed his juvenile probation."

¶ 12　　　　Defense counsel stressed that defendant "had no failures to appear" and was considered a low risk on the Virginia Pretrial Risk Assessment Instrument-Revised (VPRAI-R) assessment summary. "He doesn't have anything in his history relating to a gun. He doesn't have any history of violence. He doesn't have anything but this juvenile case which is long ago over." Counsel further pointed out that defendant "has a job at OSF" and had "graduated from high school." Counsel said that defendant "would live with his mother. And he does not object to being placed on an electronic monitor until he has his day in court where he can have a full trial on the facts."

¶ 13　　　　The State reiterated that Sontarrius, "the defendant's older brother, admitted to being the individual who walked the two alleged purchasers down the alley." He said that

> "all four [got] out, [began] pointing firearms at [Brendlinger and Sharp]. They [stole] a phone from *** Brendlinger demanding money to the point where *** Sharp then [felt] it necessary that their lives are in danger to pull out his own firearm

and shoot resulting in the death of one of the defendant's friend, Marcus Whitehead."

The State added, "I would very much challenge the characterization of the evidence as not incredibly strong. The defendant's own older brother name[d] the defendant as one of the participants."

¶ 14    The State said that Sontarrius and Branscumb had "both implicated themselves in this. It wasn't them saying, oh, it's this other guy. They said they were involved. So, this is not your normal, they were trying to get out of it and blaming someone else. They're implicating themselves and putting him as one of the individuals." Moreover, it added:

"And the fact that just minutes after the incident takes place, their story is absolutely corroborated by the video which shows all three of the people that Sontarrius described coming home after the robbery are shown on video. All three coming into Sontarrius' home after the robbery.

So, I believe the evidence is overwhelming of the defendant's guilt."

¶ 15    The State also argued that defendant posed a danger to the community "given that he's apparently the type of individual who had planned an armed robbery. A very cold, calculated robbery that was set up and planned from the get-go through Facebook. So, we would request the defendant be detained." When asked by the circuit court to respond to defense counsel's statement regarding electronic monitoring, the State answered:

"I think that the fact is that electronic monitoring would tell us whether the defendant had done something very dangerous to the rest of the community after the fact, but it does absolutely nothing to prevent the defendant from, again, engaging in behavior that would put people in danger. That's simply an

investigative tool after the fact. It doesn't prevent the defendant from doing anything to harm the community."

¶ 16                                B. Court Rulings at Hearing

¶ 17        After hearing arguments, the circuit court granted the State's motion to detain. The court stated that it had "considered the proffered evidence and argument of both parties, the pretrial services report as well as the defendant's age, education, mental and physical condition as well as employment, criminal history and risk assessment score and after consideration of all the factors set forth under [section] 110-6.1," and as a result, it found "that the State has met its burden that the proof is evident or the presumption is great that this defendant has committed that offense via the proffered facts." The court found it very persuasive that defendant was "identified by a brother as well as a second co-defendant who also made statements against their own interest confessing to parts of the crime which are very, very serious, armed robbery." It further found it significant that all four of the men who exited the car—including defendant—had firearms and "then proceed[ed] to rob at gunpoint the victim as named here as well as the other victim." The court then observed that home surveillance "shows minutes later the defendant as well as the other co-defendant *** [perhaps] I should say the co-conspirator, the other individuals who are named in this" "going back to the residence minutes later."

¶ 18        On the issue of detention, the circuit court noted that defendant had a prior juvenile "adjudication for residential burglary, unlawful possession of a stolen motor vehicle and resisting a peace officer." The court commented, "I'm mindful of the arguments that your probation was successful in that case. It looks like there was a petition to revoke along the way. You served that sanction but then otherwise finished your probation successfully."

¶ 19    It further addressed defense counsel's comment that defendant resided with his mother.

> "You've lived there at that specific residence for about a year. You've lived in the Peoria area your whole life; and that you would return to the same residence upon any release; that you're single. You do have a child. Most of your family is in the area, so you do have, it sounds, like stable family ties to the community and that your mother—

> * * *

> *** And then you are employed, and you do have a diploma from Richwoods High School. And, of course, the employment and education being very positive factors in your situation."

The court then stated that defendant ranked as a moderate risk on the VPRAI-R and had "[n]o history of psychiatric or substance abuse. You're not currently on probation, no prior failures to appear."

¶ 20    As to whether defendant posed a real and present threat to the safety of any person or persons or the community based on the specific facts in this case and whether defendant posed a risk of willful flight, the circuit court acknowledged that it did not consider defendant a flight risk, but that the charged offense was "extremely serious, armed robbery with a firearm. The history and characteristics of you as well as anyone to whom their safety would be threatened by your release." Although noting that defendant had not targeted a specific person for the crime charged, the court stated, "it doesn't matter who that person was. It could be anyone in the community. If they have something that you or your co-conspirators found of value, that you used a firearm and threat of force to take that from them against the laws of our state."

¶ 21　　　　　　Concerning the use of firearms,

> "I don't know the scenario about how you or your older brother or the rest of these co-conspirators had access to firearms, but there were a lot of firearms involved. Almost sounds like every single person in the vehicle, four out of four, had a firearm and planned to use it against the victims here."

The court said,

> "you were working and living with your mother at the time that you managed to have access to firearms—you and your co-conspirators—and so I don't know that releasing you back to your mother's house is going to give me any confidence that you couldn't go do the same thing."

¶ 22　　　　　　Concerning defense counsel's suggestion of monitoring, the circuit court stated,

> "An ankle monitor doesn't prevent you from going to wherever one goes at 18 years old and unlawfully finds themselves in possession of a firearm to use in an armed robbery. So, knowing where you are at any given time wouldn't prevent the type of harm that is contemplated here."

The circuit court further stated:

> "[D]ue to the nature and the circumstances of this offense, I've reviewed all of these. The most restrictive that I could impose still does not give me confidence that you would not present a real and present threat to the safety of any person or persons or the community based on the very serious allegations here ***."

The court found that the State had met its burden of proof and granted its petition to detain.

¶ 23　　　　　　　　　　　　C. Written Order

¶ 24 A written order for detention was entered on February 26, 2024, which found that defendant had been charged with a detainable offense and that the State had met its burden of showing the proof was evident or presumption great that defendant committed the charged offense. The order further provided:

"On 1/15/2024, the Defendant along with four other identified individuals planned a robbery of two individuals who thought they were buying a vehicle. A coconspirator, who turned out to be Defendant's older brother, took the two victims to a back alley where a vehicle of four males—all four armed with firearms per surveillance footage including the Defendant—jumped out of the vehicle and attempted to rob the two [individuals] at gunpoint. During an ensuing scuffle between the five robbers and two victims, the Defendant was identified as taking the identified victim's phone from her person. Shots were fired and one of the individuals involved in the robbery died as a result. Additional home surveillance showed [Defendant] and other coconspirators all arriving to a house 'within minutes' of the robbery and shooting, and law enforcement found keys at the house that were relevant to the vehicles involved. Two coconspirators made inculpatory statements as to themselves and also implicated Defendant *** as being one of the four males who waited in the car and jumped out with firearms to rob the two victims. [Defendant's counsel] proffered that no firearm was found on Defendant at the time of his arrest, which was this week approximately a month after the crime occurred.

The Court finds that the Defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific, articulable

facts of this case and that no condition or combination of conditions set forth in 725 ILCS 5/110-10 can mitigate the real and present threat for the reasons stated on the record in open court and incorporated into this Order, and summarized above and as follows. The nature and circumstances of the offense are very serious here as it is a crime of violence, involving a firearm, use of that firearm to threaten and cause serious harm. The type of harm created by the use of firearms in conjunction with a robbery—violence—expressly played out in this scenario when shots were fired and one of the individuals involved died. The victims did not appear to be personally known to Defendant but were randomly selected from the robbery set up for a vehicle purchase, which indicates a harm to the community at large. The Defendant is only l8 years of age, which is taken into account by the Court, however, he was previously adjudicated in juvenile court for residential burglary, unlawful possession of a stolen motor vehicle, and resisting a peace officer, for which probation was revoked once but after a resentencing to jail and probation, Deft did complete successfully in October 2022. The VPRAI[-R] rates Defendant a moderate risk. While the Court is mindful of Defendant's youth and notes he is currently employed, there is no combination of conditions that can mitigate the threat he poses to the community. He lived at home when he committed this offense and was inexplicably able to access a firearm to use in this robbery, even though the law forbids his mere possession of a firearm based on his juvenile history. In addition, the firearm he used in the commission of this offense is unaccounted for by the evidence tendered to the Court, so even release back to his mother's home

on the most restrictive conditions does not satisfy the Court that conditions would be sufficient to keep the community safe."

¶ 25 Defendant filed his notice of appeal pursuant to Illinois Supreme Court Rule 604(h) (eff. Dec. 7, 2023) on March 1, 2024, raising three issues with the noted explanations. First, defendant stated that "[t]he State failed to meet its burden of proving by clear and convincing evidence that the proof is evident or the presumption great that defendant committed the offense(s) charged." Defendant then added, "There is almost no evidence that the Defendant committed the crime(s) for which he stands accused." Second, defendant asserted that the State "failed to meet its burden of proving by clear and convincing evidence that defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case." Defendant further explained, "This Defendant had a job, is a high school graduate, and [has] a scant criminal record. He is and was always willing to be placed on electronic monitor[ing]."

¶ 26 Finally, defendant stated that the State had "failed to meet its burden of proving by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case, or defendant's willful flight." For this ground, he provided no further explanation. This latter issue, however, was addressed in defendant's memorandum filed with this court pursuant to Illinois Supreme Court Rule 604(h)(2) (eff. Dec. 7, 2023).

¶ 27 This appeal followed.

¶ 28 II. ANALYSIS

¶ 29 Section 110-6.1(e) of the Code provides that all criminal defendants are presumed eligible for pretrial release. 725 ILCS 5/110-6.1(e) (West 2022). A defendant may be denied

release only if, upon verified petition, the State proves by clear and convincing evidence at a detention hearing that (1) the proof is evident or the presumption great the defendant committed a detainable offense, (2) the defendant poses a threat to the safety of the community or any person in the community, and (3) no combination of conditions can mitigate the threat to the safety of the community. *Id.* §§ 110-6.1(a), (e)(1)-(3).

¶ 30 We review a circuit court's decision to detain a defendant under an abuse of discretion standard of review. *People v. Morgan*, 2024 IL App (4th) 240103, ¶ 35. " 'An abuse of discretion occurs when the circuit court's decision is "arbitrary, fanciful or unreasonable," or where "no reasonable person would agree with the position adopted by the [circuit] court." ' " *People v. Inman*, 2023 IL App (4th) 230864, ¶ 10 (quoting *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9, quoting *People v. Becker*, 239 Ill. 2d 215, 234 (2010)). On this point, we briefly note that defendant has challenged our application of the abuse of discretion standard and advocated for a *de novo* review, relying on the special concurrence in *People v. Saucedo*, 2024 IL App (1st) 232020, ¶¶ 98-100 (Ellis, J., specially concurring). However, we decline defendant's invitation and continue to adhere to the analysis set forth in our recent decision in *Morgan*.

¶ 31 A. Commission of the Offense

¶ 32 Defendant first contends the State failed to meet its burden of proving by clear and convincing evidence that the proof was evident or the presumption great that he committed the offense charged. In his notice of appeal, defendant elaborated that there was "almost no" evidence that he committed the crime. However, he did not address this contention in his supporting memorandum. Since defendant complied with the minimum requirements of Illinois Supreme Court Rule 604(h)(2) (eff. Dec. 7, 2023), we will address this point on appeal.

¶ 33    We note that there was significant evidence presented at the detention hearing concerning whether defendant had committed the charged offense. Specifically, two individuals who also participated in the alleged crime identified defendant as being present and a participant. One of these individuals was defendant's older brother. Branscumb said that defendant exited the SUV during the robbery armed with a handgun. A home security video also showed defendant and two others who were involved in the alleged act returning to defendant's brother's home shortly after the alleged robbery took place. The circuit court found this evidence convincing and concluded that the State had satisfied its burden of proving through clear and convincing evidence that the proof was evident or the presumption great that defendant committed the offense charged. We find no abuse of discretion.

¶ 34                                B. Real and Present Threat

¶ 35    Second, defendant argues the State likewise failed to prove by clear and convincing evidence that he posed a real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case. In his notice of appeal, he explained that he "had a job" and "is a high school graduate," and further that he had "a scant criminal record." He further stated that he "is and was always willing to be placed on electronic monitor[ing]." Here, the court considered all the arguments and evidence and, based on its review, found that defendant constituted a threat to the community.

¶ 36    According to the circuit court, the history and characteristics of defendant presented a risk to the community. The court had earlier noted defendant's juvenile record, which included charges of residential burglary and unlawful possession of a stolen vehicle. Although noting that defendant had not targeted a specific person for the crime charged, the court stated, "it doesn't matter who that person was. It could be anyone in the community. If they have something that you

- 13 -

or your co-conspirators found of value, that you used a firearm and threat of force to take that from them against the laws of our state." Moreover, the court stated, "The victims did not appear to be personally known to Defendant but were randomly selected from the robbery set up for a vehicle purchase, which indicates a harm to the community at large." For these reasons, the court concluded defendant constituted a threat to the community. We find no abuse of discretion.

¶ 37                           C. Conditions Mitigating Clear and Present Risk

¶ 38        Third, defendant contends that the State failed to meet its burden of proving by clear and convincing evidence that no condition or combination of conditions could mitigate the real and present threat presented or his willful flight. Although defendant offered no explanation on this issue in his notice of appeal, he did file a Rule 604(h)(2) memorandum with this court addressing the issue.

¶ 39        The circuit court addressed each of defendant's contentions as to potential conditions that might mitigate any threat he posed to the community. Concerning defendant's suggestion that he reside with his mother upon release, the court stated,

> "you were working and living with your mother at the time that you managed to
> have access to firearms—you and your co-conspirators—and so I don't know that
> releasing you back to your mother's house is going to give me any confidence that
> you couldn't go do the same thing."

Concerning the potential use of monitoring, the court stated:

> "An ankle monitor doesn't prevent you from going to wherever one goes at
> 18 years old and unlawfully finds themselves in possession of a firearm to use in
> an armed robbery. So, knowing where you are at any given time wouldn't prevent
> the type of harm that is contemplated here."

The court's comments concerning the specific usefulness of electronic monitoring echo those we made in *People v. Thomas*, 2024 IL App (4th) 240248, ¶ 26.

¶ 40    In its conclusion on the issue of conditions, the circuit court stated that it had considered "the nature and the circumstances of this offense," and that the "most restrictive" condition the court could impose did not give it "confidence that [defendant] would not present a real and present threat to the safety of any person or persons or the community based on the very serious allegations here." As the record shows, the court considered the arguments presented and rejected them, deciding that none of the proffered conditions mitigated the threat posed. We find no abuse of discretion.

¶ 41    Additionally, we note that on the issue of whether any conditions could mitigate the threat, defendant cites *People v. Stock*, 2023 IL App (1st) 231753, ¶ 17, for the proposition that the State was required to proffer more than just the nature of the offense charged in support of its claim that defendant was a threat and that no conditions could mitigate that threat. As we recently stated in *People v. Fugate*, 2024 IL App (4th) 240254-U, ¶ 38:

> "We decline to accept any reading of *Stock* and its progeny that would conclusively prohibit a court, under the right circumstances, from relying solely on the nature of the charges to conclude that conditions of release would be inadequate to mitigate the threat posed by a defendant. For our purposes, however, we conclude that the circuit court's thoughtful and thorough considerations of the effectiveness of conditions of release is sufficient to distinguish this case from *Stock* ***."

¶ 42    The same distinction holds true here. The circuit court's analysis makes clear that it considered more than simply the nature of the charged offense. Moreover, the court specifically

addressed each of defendant's arguments as to potential conditions that might warrant his release, *i.e.*, release to his mother's custody and release with monitoring.

¶ 43                           III. CONCLUSION

¶ 44        For the reasons stated, we affirm the circuit court's denial of pretrial release.

¶ 45        Affirmed.