2026 IL App (1st) 252404-U

FIRST DISTRICT,
SIXTH DIVISION
January 30, 2026

No. 1-25-2404B

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 22 CR 1135401 |
| JOSEPH VERDONE, | ) ) ) | Honorable |
| Defendant-Appellant. | ) ) ) | Charles P. Burns, Judge Presiding. |

JUSTICE GAMRATH delivered the judgment of the court.
Justices Pucinski and Hyman concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Affirmed. Court did not err in denying defendant's motion for relief.

¶ 2     In 2022, a verbal altercation outside a nightclub between two strangers, defendant Joseph Verdone and the victim Enrique Martinez, led to Verdone pursuing and striking Martinez with his vehicle and dragging him down the road until he was killed. Verdone was subsequently charged with first degree murder and denied bail.

¶ 3     After enactment of the Pretrial Fairness Act (Act), Verdone sought pretrial release under Illinois Supreme Court Rule 604(h) (eff. Apr. 15, 2024). On September 22, 2025, the circuit court

denied Verdone's motion for relief, ordering that he continue to be detained pretrial under article 110 of the Code of Criminal Procedure of 1963 (725 ILCS 5/110 (West 2022)), as amended by the Act. See Pub. Acts 101-652, § 10-255 (eff. Jan. 1, 2023); 102-1104, § 70 (eff. Jan. 1, 2023); Ill. S. Ct. R. 604(h)(1) (eff. Apr. 15, 2024); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). Verdone now appeals, arguing the State failed to present clear and convincing evidence that he committed first degree murder, that he posed a real and present threat to the safety of the community, and that no less restrictive conditions could mitigate that threat. For the following reasons, we affirm the order denying Verdone's motion for relief.

¶ 4                                              BACKGROUND

¶ 5        Verdone was arrested on September 6, 2022, and subsequently charged with and indicted on two counts of first degree murder (720 ILCS 5/9-1(a)(1), (2) (West 2018)). Following a bond hearing on September 9, 2022, Verdone was denied pretrial release and held without bail.

¶ 6        On February 7, 2024, Verdone filed a petition to grant pretrial release under the Act. A week later, the State filed a verified petition for a pretrial detention hearing, alleging that Verdone committed the eligible offense of first degree murder, poses a real and present threat to the safety of any person or persons or the community, and no combination of conditions could mitigate the threat. See 725 ILCS 5/110-6.1(a)(4) (West 2022)). The hearing was held the same day.

¶ 7        According to the State's proffer, Verdone and Martinez had no connection to each other but were both at Mine Music Hall in the early morning hours of September 4, 2022. A fight broke out and security personnel kicked Verdone and his girlfriend out of the club. A few minutes later, Verdone pulled up to the front of the club in a gray Toyota sedan, registered to Verdone. Verdone's girlfriend exited the car and went into the club to look for some things but was kicked out again. Verdone got out of his car and ushered his girlfriend from the club back to the Toyota. Martinez

and a companion were standing outside and Martinez made "some sort of remark" to Verdone's girlfriend. Verdone became upset and he and Martinez had a brief exchange of "heated words."

¶ 8    Verdone and his girlfriend got back into the Toyota and pulled into the eastbound lanes of Lake Street towards Ogden. At the same time, Martinez and his companion were walking east on the Lake Street sidewalk then turned onto the Ogden sidewalk. Surveillance video shows Verdone's Toyota turning right on Ogden and slowly driving up onto the sidewalk, careful to avoid trees, light poles, and buildings. Verdone centered his car on the sidewalk and accelerated "at a high rate of speed" towards Martinez and his companion. Martinez's companion moved out of the way, but Verdone struck Martinez with the front left bumper of his car. The car dragged Martinez for approximately 60 feet. Verdone briefly slowed down at a traffic light and then sped away, leaving Martinez's battered body on the ground.

¶ 9    According to the State, police located the Toyota at Verdone's home. The vehicle showed damage consistent with the collision, and a blood-like substance was recovered from its undercarriage, even though it had been freshly washed. Verdone was identified in "high quality color surveillance video" at the club, by the security's ID card scanner, by a friend in subsequent police interviews, and in photo arrays by security guards. Verdone had prior convictions for four felony drug offenses and had been released from parole less than three months before this incident.

¶ 10   The State argued, "based upon the facts and circumstances of this incident, that the defendant did not know the victim prior to this date, that he is a danger to the People of Cook County" and requested the court "maintain his detention." In response, Verdone's counsel argued the State's petition was "vague as to the specific and articulable facts that make [Verdone], in the State's opinion, a danger to a person or persons or the community." Counsel maintained that the

various identifications merely placed Verdone at the club and that no witness testimony corroborated "that there was an acceleration of this vehicle."

¶ 11        The circuit court denied Verdone pretrial release, finding the "proof is evident and the presumption is great" that Verdone committed first degree murder, that he "does, in fact, pose a real and present threat to the safety or [*sic*] persons based on the articulable facts of the case," and that "no conditions or combination of conditions can mitigate the real and present threat to the safety of persons or the community." Verdone then filed a motion for relief, arguing he was not an aggressor. He contended the surveillance video depicting the supposed heated exchange of words between Verdone and Martinez lacked audio and that Martinez could have been speaking to someone else. He further asserted that the Toyota was not washed before detectives located it, that a Vehicle Reconstruction Report from his retained expert indicated that the car was "not accelerating to its full capability" at the time of the collision, and that the vehicle's "CDR" did not include data from the collision. Despite these arguments, the court determined the State met all three detention prongs and denied Verdone's motion for relief. Verdone appeals.

¶ 12                                    ANALYSIS

¶ 13        Verdone argues that the State failed to prove by clear and convincing evidence that the proof was evident or the presumption great that he committed first degree murder, that he posed a real and present threat to the safety of any person or the community, and that no less restrictive conditions could mitigate that threat or ensure his appearance at later hearings. We disagree.

¶ 14        For the State to obtain an initial detention order, the Act requires three showings by "clear and convincing" evidence: (1) that the proof is evident or the presumption great that a defendant has committed a qualifying offense (725 ILCS 5/110-6.1(e)(1) (West 2022)); (2) that the defendant's pretrial release poses a real and present threat to the safety of any person or persons

or the community (725 ILCS 5/110-6.1(a)(1)-(7), (e)(2) (West 2022)) or a likelihood of willful flight to avoid prosecution (725 ILCS 5/110-6.1(a)(8), (e)(3) (West 2022)); and (3) that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community or prevent the defendant's willful flight from prosecution (725 ILCS 5/110-6.1(e)(3) (West 2022)). The "clear and convincing" standard of proof requires more than a preponderance of the evidence but less than proof beyond a reasonable doubt. *People v. Clay*, 361 Ill. App. 3d 310, 322 (2005). Where, as here, the State proceeds by proffer, our standard of review is *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54.

¶ 15    First, Verdone argues the State failed to show it is evident or the presumption great that he committed first degree murder, primarily because he was not acting violently or aggressively prior to the incident. Not so. The State's proffer shows that Verdone and Martinez exchanged heated words and to exact revenge for this verbal slight, Verdone slowly maneuvered his vehicle onto the sidewalk where Martinez was walking, carefully avoiding trees and light poles. He accelerated until he struck Martinez and dragged him 60 feet down the road, slowing down only briefly at a stoplight before speeding off and leaving Martinez's body behind. These events were captured on surveillance video and are sufficient to show by clear and convincing evidence that Verdone committed first degree murder. See 720 ILCS 5/9-1(a) (West 2018).

¶ 16    Second, Verdone argues the State failed to establish he posed a real and present threat to the safety of the community and that no conditions could mitigate the real and present threat he posed or prevent his flight. For this, Verdone points to his lack of prior violent convictions and 38 letters from family, friends, and community members supporting him.

¶ 17    "[T]he nature and circumstances of the offense charged is the *prime* consideration in determining the conditions of release, if any ([725 ILCS 5/] §110-5(a)(1)), and in denying pretrial

release (*id.* § 110-6.1(a)), including in making the dangerousness determination (*id.* § 110-6.1(g)(1))." (Emphasis in original.) *People v. Carpenter*, 2024 IL App (1st) 240037, ¶ 14. Verdone's actions on the night in question demonstrate a hair-trigger temper and willingness to resort to devastating violence in reaction to heated words from a stranger. Rather than stay and tend to Martinez after the supposed "accident," Verdone left Martinez's lifeless body in the street and fled. He also cleaned the vehicle to remove any trace of the destruction he wrought that night. It is abundantly clear from the proffered evidence that Verdone poses a real and present threat to the safety of the community, and the State amply met its burden of proof.

¶ 18 Furthermore, we agree with the circuit court that no measures, including electronic home monitoring, could adequately mitigate Verdone's dangerousness. This was an intentional act, purposely targeting the victim who was a stranger to Verdone. It also endangered a broader population, as the manner of driving and fleeing the scene reflects a conscience disregard for the safety of others. Verdone committed the offense while on parole, and there is "a serious risk" he would not appear in court given that the charge is a non-probationable offense. He has already demonstrated a willingness to flee the fatal scene, and electronic monitoring or curfew would not ensure that he "stay in the place where [he is] supposed to be." As explained in *People v. Thomas*, 2024 IL App (4th) 240248, "[k]nowing that electronic monitoring might *detect* a failure to comply with conditions of release does not diminish concerns that a particular defendant appears to present a greater risk of noncompliance." (Emphasis in original.) *Id.* ¶ 26. Based on our review of the record, we find the circuit court correctly denied Verdone's motion for relief.

¶ 19                                          CONCLUSION

¶ 20 For the foregoing reasons, we affirm the order of the circuit court of Cook County.

¶ 21 Affirmed.