NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 251397-U

NO. 4-25-1397

IN THE APPELLATE COURT

FILED
March 24, 2026
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| BRYCE R. McDANIEL, | ) | No. 25CF288 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Doherty and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed the trial court's orders granting the State's petition to deny defendant pretrial release and denying defendant's motion for relief, as the State proved by clear and convincing evidence that (1) the proof is evident or presumption great that defendant committed a detainable offense and (2) no condition or combination of conditions can mitigate the real and present threat posed by defendant to the safety of any person or the community.

¶ 2    Defendant, Bryce R. McDaniel, appeals an order denying a motion for relief after the trial court granted the State's petition to deny him pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2024)), hereinafter as amended by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act. We affirm.

¶ 3                                  I. BACKGROUND

¶ 4    On November 21, 2025, the State charged defendant in a three-count information

with two counts of delivery of methamphetamine between 15 and 100 grams, Class X felonies (720 ILCS 646/55(a)(2)(C) (West 2024)), and one count of possession with intent to deliver less than 5 grams of methamphetamine, a Class 2 felony (720 ILCS 646/55(a)(2)(A) (West 2024)). The State alleged that defendant knowingly delivered more than 15 grams but less than 100 grams to a confidential police source on October 29, 2025, and November 19, 2025, and additionally possessed with intent to deliver less than 5 grams of methamphetamine on November 19, 2025.

¶ 5    The same day it charged defendant, the State filed a petition to deny defendant pretrial release on the grounds that he posed a real and present threat to the safety of any person or persons in the community. At a hearing on the petition, the State made the following factual proffer. On October 29, 2025, defendant and his codefendant contacted a confidential police source about the sale of methamphetamine, then sold 28.6 grams of methamphetamine to the source in Pontiac, Illinois. On November 19, 2025, defendant and his codefendant again sold 104 grams of methamphetamine to the confidential source in Pontiac. During one of the calls with the confidential source, "defendant was heard by the source giving directions to the confidential source." That day, defendant and his codefendant were arrested and taken into custody. A search of their vehicle revealed an additional 0.4 grams of methamphetamine. Defendant was the driver of the vehicle during the drug transactions. A field test of the drugs came back positive for methamphetamine.

¶ 6    The trial court admitted the pretrial investigation report and the Office of Statewide Pretrial Services (OSPS) proffer outline. The pretrial investigation report showed that defendant resided with his father and had partial custody of two young children. He was on probation for a burglary case in Vermillion County. His pretrial release in that case was revoked in June 2024 but reinstated in August 2024. He worked part time for a construction company in Danville, Illinois.

He reported "a history of using methamphetamine, cocaine, and marijuana." The Virginia Pretrial Risk Assessment Instrument-Revised (VPRAI-R) indicated defendant scored 10 out of 14 points, as he was currently on probation, the current charge was a felony drug charge, his criminal history included at least one misdemeanor or felony conviction, he was considered to be "[u]nemployed" at the time of arrest because he only worked part time, and he had a history of drug abuse. A score of 10 placed defendant at risk level 5, with a predicted failure rate of 29.3%. Defendant's criminal history included convictions in 2025 for burglary (a Class 2 felony), 2022 for possession of more than 15 but less than 100 grams of methamphetamine (a Class 1 felony), and 2019 for burglary (a Class 2 felony). He also had juvenile adjudications in 2017 for aggravated battery (a Class 3 felony) and 2015 for retail theft (a Class A misdemeanor)

¶ 7        Defense counsel proffered that defendant denied the allegations and that "OSPS can monitor [his] client to a greater extent than the VPRAI[-R] score would allow per the OSPS guidelines." Defense counsel argued that "[his] client did not make the arrangements for this sale, he was just the driver." He acknowledged that defendant was on probation for a different offense at the time and had "prior substance-abuse issues."

¶ 8        The trial court granted the State's petition to detain defendant. The court found that the State showed by clear and convincing evidence that defendant committed a detainable offense. The court acknowledged that defendant claimed he was merely the driver but emphasized that "under the accountability theory, you're driving, you are responsible for the conduct that resulted, that being this controlled buy," and the confidential source heard defendant giving directions through a phone call. The court highlighted that "[t]he nature and circumstances of this offense are particularly egregious given the insane amount of methamphetamine that was delivered. 28.6 grams alone is really high; but then when you have 104 grams, that's almost out of the realm of

being able to comprehend that amount of methamphetamine." As a result, the court found that defendant posed a real and present threat to the safety of any person because "[t]his is more than one delivery, and the amount is staggering."

¶ 9    The trial court further mentioned that defendant had a prior record and was on probation at the time of the offense for burglary, a Class 2 felony, demonstrating that defendant was unable to comply with the conditions of his probation. The court also noted that defendant's pretrial release in Vermillion County was recently revoked before it was reinstated, which further demonstrated that defendant "has a significant history of violating court orders and being unable to comply with minimal requirements, such as not committing crimes while on probation."

¶ 10    The trial court also remarked that defendant scored a 10 on the VPRAI-R, which would require "a significant amount of contact even if the Court chose not to order any increased reporting." It noted that "[t]he Pretrial Services officer could do home visits, but that is only in conjunction with cooperation from the local law enforcement agency," and "I'm not even sure what law enforcement agency would be involved in Fithian, Illinois; and so, I don't know that there are any procedures in place that would provide for home visits to be conducted." The court went on to find that "even home visits would fall far short of being able to confirm any restrictions this Court may place on this defendant such as not using alcohol or drugs, not dealing with drugs," as defendant "could be in his home [and] he could be dealing drugs," and "even home confinement or electronic monitoring would not prevent this defendant from using drugs or selling drugs." Consequently, the court found that defendant would be unlikely to comply with some or all pretrial release conditions that could be imposed and that less restrictive conditions would not avoid "the very real and present threat to the safety of the community."

¶ 11    On December 3, 2025, defendant filed a motion for relief under Illinois Supreme

Court Rule 604(h)(2) (eff. Apr. 15, 2024), arguing that (1) the State failed to show that he committed a detainable offense and (2) there are less restrictive conditions that would avoid a real and present threat to the safety of any person or persons in the community. At a hearing on the motion on December 22, 2025, the trial court found that defendant did not present any new arguments and denied the motion for relief.

¶ 12          This appeal followed.

¶ 13                          II. ANALYSIS

¶ 14          On appeal, defendant filed a notice in lieu of a memorandum and therefore stands on his motion for relief filed in the trial court. See Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024). Under section 110-6.1(e) of the Code, "defendants shall be presumed eligible for pretrial release." 725 ILCS 5/110-6.1(e) (West 2024). Once the State files a petition to deny pretrial release, the trial court must hold a hearing. 725 ILCS 5/110-6.1(a) (West 2024). The State must prove by clear and convincing evidence that (1) the proof is evident or presumption great that the defendant committed a detainable offense; (2) the defendant poses a real and present threat to the safety of any person, persons, or the community, based on the specific, articulable facts of the case; and (3) no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community based on the specific facts of the case. 725 ILCS 5/110-6.1(e)(1)-(3) (West 2024).

¶ 15          Pursuant to a recent decision from the Illinois Supreme Court, "when the parties to a pretrial detention hearing proceed solely by proffer, the reviewing court is not bound by the circuit court's factual findings and may therefore conduct its own independent *de novo* review of the proffered evidence and evidence otherwise documentary in nature." *People v. Morgan*, 2025 IL 130626, ¶ 54. As the parties proceeded by proffer at the pretrial detention hearing in this case,

we review the trial court's detention decision *de novo*.

¶ 16                               A. Detainable Offense

¶ 17        Defendant first challenges the trial court's finding that the proof was evident or presumption great that he committed a detainable offense, as he "proffered that he denied that the events in the information occurred." He does not argue the offenses with which he was charged do not qualify as detainable offenses. See 725 ILCS 5/110-6.1(a) (West 2024).

¶ 18        We agree with the trial court's finding that the proof was evident or presumption great that defendant committed the charged offenses. The court was not required to find otherwise merely because defendant claimed innocence. See *People v. Ortiz*, 196 Ill. 2d 236, 267 (2001) ("[A] fact finder need not accept the defendant's version of events as among competing versions."). The State proffered that defendant was present during two controlled buys with the Livingston County Police Department on October 29, 2025, and November 19, 2025, where he and his codefendant sold 28.6 grams and then 104 grams of methamphetamine to a confidential source. A search of his vehicle revealed another 0.4 grams of methamphetamine. The confidential source heard defendant giving him directions during a phone call. Defendant admitted that he was the driver of the vehicle. All these facts support the court's finding that the State met its burden of proof that defendant committed a detainable offense. We reach the same conclusion on this issue pursuant to our own *de novo* review of the record.

¶ 19                               B. Conditions of Release

¶ 20        Defendant next argues that the trial court erred in finding that there was no condition or combination of conditions that could mitigate the threat that he poses to the community. He contends that he would abide by all pretrial conditions and that GPS monitoring, weekly check-ins, and "more monitoring" would mitigate any purported threat.

¶ 21　　　　Courts may consider many factors in determining whether there are conditions that can mitigate a defendant's dangerousness, including (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence against the defendant"; (3) "the history and characteristics of the defendant," including "the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct, history criminal history [*sic*], and record concerning appearance at court proceedings"; (4) "the nature and seriousness of the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case"; and (5) "the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process that would be posed by the defendant's release, if applicable." 725 ILCS 5/110-5(a)(1)-(5) (West 2024). Another "relevant consideration is whether there is reason to believe the defendant is likely to violate the conditions the court might impose." *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 18. In each case, a court must conduct an "individualized" assessment of the propriety of detaining the defendant versus releasing him or her with conditions. 725 ILCS 5/110-6.1(f)(7) (West 2024).

¶ 22　　　　Here, we agree with the trial court's finding that the State proved by clear and convincing evidence that no combination of conditions of pretrial release could mitigate any threat posed by defendant. Defendant's argument that "[t]here was nothing presented as to the Defendant's background and/or characteristics that would overcome the presumption that the Defendant should be released under pretrial conditions" is belied by the pretrial investigation report. This report indicated not only that defendant had a significant criminal history dating back more than 10 years and a history of substance abuse issues with methamphetamine, cocaine, and marijuana, but also that his pretrial release had previously been briefly revoked in a separate case

in Vermillion County and that he was on probation in connection with that case at the time he committed the offenses at issue here. See 725 ILCS 5/110-5(a)(3) (West 2024). He had a high VPRAI-R score of 10 out of 14 points, which placed him at risk level 5, with a failure rate of 29.3%. The court also emphasized the high quantity of methamphetamine that was involved, which we agree is a relevant factor weighing in support of detention. See 725 ILCS 5/110-5(a)(1), (4) (West 2024). Additionally, although defendant denied that he possessed the methamphetamine or was involved in the transaction, he admitted that he was the driver of the vehicle at the time, which goes to the weight of the evidence against him. See 725 ILCS 5/110-5(a)(2) (West 2024).

¶ 23    This court has previously explained:

"When coupled with a geographic limitation such as home confinement, electronic monitoring can help alert pretrial officers to a potential violation of that geographic limitation. But any condition of release must be appropriately measured to meet the danger presented in each case. Knowing that electronic monitoring might *detect* a failure to comply with conditions of release does not diminish concerns that a particular defendant appears to present a greater risk of noncompliance, especially if the consequences of noncompliance may be grave." (Emphasis in original.) *People v. Thomas*, 2024 IL App (4th) 240248, ¶ 26.

The same is true here. Defendant's history, especially that his pretrial release was revoked for two months in the Vermillion County case and that he committed these offenses while on probation in connection with that case, indicates that he presents a greater risk of noncompliance with pretrial release. Moreover, the conditions suggested by defendant may be insufficient to mitigate defendant's dangerousness; as the trial court also emphasized, defendant could remain involved with using and dealing drugs at home, which home confinement, electronic monitoring, and

weekly check-ins with pretrial services would be insufficient to prevent.

¶ 24　　　All these factors, taken together, support the finding that the State proved by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat posed by defendant to his community. Consequently, the trial court properly granted the State's petition to deny defendant pretrial release.

¶ 25　　　　　　　　　　III. CONCLUSION

¶ 26　　　For the reasons stated, we affirm the trial court's judgment.

¶ 27　　　Affirmed.