NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 250016-U

NO. 4-25-0016

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 14, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Peoria County |
| DION GRAHAM, | ) | No. 24CF949 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Katherine S. Gorman, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE HARRIS delivered the judgment of the court.
Justices Steigmann and Lannerd concurred in the judgment.

**ORDER**

¶ 1     *Held*: The appellate court affirmed, holding the State proved by clear and convincing evidence that defendant posed a real and present threat to the safety of any person or persons or the community that could not be mitigated through any combination of conditions of pretrial release and the trial court's findings in its written detention order along with its oral pronouncements adequately explained its decision.

¶ 2     Defendant, Dion Graham, appeals the trial court's order denying him pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), hereinafter as amended by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023). Defendant argues the State failed to prove by clear and convincing evidence that he posed a danger to any person or persons or the community that could be mitigated by

conditions of pretrial release. Defendant also argues the court's written findings in support of its detention order were insufficient. We affirm.

¶ 3                                I. BACKGROUND

¶ 4         On October 10, 2024, the State charged defendant with aggravated battery (720 ILCS 5/12-3.05(e)(1) (West 2022)) in that he, in committing a battery without legal justification, knowingly discharged a firearm in the direction of Kendall Young, thereby causing an injury to Young. That same day, the State filed a verified petition to deny defendant pretrial release, which alleged defendant had been charged with a detainable offense, and his pretrial release posed a real and present threat to the safety of any person or persons or the community. A pretrial services investigation report was also filed that day. The report indicated that defendant was not on any form of supervision and had no adult criminal history. He scored 0 out of 14 on the Virginia Pretrial Risk Assessment Instrument-Revised. The report stated defendant worked as a carpenter's apprentice, lived with his grandmother and sister, had four children, and denied having mental health or medical issues.

¶ 5         On October 11, 2024, the trial court held a detention hearing at which defendant was represented by the public defender's office. The State proffered that, at around 1:30 a.m. on the day of the incident, police officers responded to a parking lot after receiving reports that an individual had been shot. The officers found Young lying on the ground with multiple gunshot wounds, and Young was transported to the hospital. He later had a metal rod placed in his leg and reconstructive surgery on his hand due to his gunshot wounds.

¶ 6         The State asserted that police officers obtained closed-circuit television (CCTV) recording of the parking lot where the incident occurred. The State indicated that the video showed Young and defendant standing next to a walk-up window at a restaurant. Young turned

and slapped defendant in the face. Defendant backed up a few steps, and Young began to flee on foot. Defendant then chased Young and fired multiple shots at him, striking him. Defendant then fled the scene in his vehicle. The trial court admitted into evidence two CCTV recordings of the incident at the State's request and viewed the videos. The State also proffered that Young identified defendant as the shooter in a photographic lineup, and defendant eventually admitted to the police that he shot Young in self-defense after initially denying involvement in the incident.

¶ 7 Defense counsel proffered that defendant financially supported his four children, would lose his job if he remained in custody, and would be willing to follow any conditions of release imposed by the trial court.

¶ 8 After hearing arguments, the trial court found the State had proven by clear and convincing evidence that defendant had committed a detainable offense, he posed a real and present threat to the safety of Young and the community generally, and there was no condition or combination of conditions of pretrial release that could mitigate this threat. See 725 ILCS 5/110-6.1(e)(1)-(3) (West 2022). The court stated its decision was largely based on "the nature and circumstances of this offense and how it was carried out as presented *** today in the State's clear exhibits." The court stated:

> "And while [defendant] was, in unprovoked fashion, physically assaulted, the way
> he carried out the crime as presented to me calls for the findings that I've made.
>
> And while considering that this is a non-probationable offense and that the
> strength of the State's case is immense; while he was physically attacked, his
> reaction went beyond any semblance of a reasonable reaction. He chased down
> the person who attacked him, who immediately began to run away after attacking

him, and shot him more than once.

And while it was clear to the Court that the person he was shooting, the named victim in this case, who was the original aggressor; while that victim was on the ground and incapacitated, he shot at him more. Way beyond reason, way beyond someone that would have the ability to abide by conditions of release when, certainly, any person of any minimal intellect would know that there would be significant loss with significant penalties for shooting another person when not needed to do so for their own protection."

¶ 9     The trial court noted that defendant supported his children, was employed, and had no adult criminal history. The court stated that "despite all the things that are clearly in the favor of the Defendant," it was granting the State's petition due to "how this crime was carried out." The court stated: "For all that seems to be right in [defendant's] life, his actions make him a danger to the community that conditions cannot protect against, based on what was viewed and was hard to view."

¶ 10    The trial court entered a written order denying defendant pretrial release. In the order, the court found the proof was evident or the presumption great that defendant had committed a detainable offense, defendant posed a real or present threat to the safety of any person or persons or the community, and no condition or combination of conditions could mitigate this threat. See 725 ILCS 5/110-6.1(e)(1)-(3) (West 2022). The court stated that its reasons for reaching this conclusion included the nature and circumstances of the offense, the fact that it was a nonprobationable offense, and the strength of the State's case.

¶ 11    On October 24, 2024, private counsel entered an appearance on defendant's behalf.

¶ 12　　　　On November 11, 2024, the trial court held a detention review hearing at which defendant was represented by private counsel. A different judge presided over this hearing than the one who presided over the initial detention hearing. Defense counsel advised the court that she had not yet received or reviewed the video recording of the incident or the transcripts of the initial detention hearing. However, counsel stated she had spoken extensively with defendant about his background and the circumstances of the case, and she believed that not all of this information was presented at the initial detention hearing.

¶ 13　　　　The trial court asked both parties to summarize the circumstances of the offense. The State asserted that, on the day of the incident, defendant and Young were in line at the take-out window of a restaurant. Young and defendant had known each other since they were children, and there was "bad blood" between them. Young "backhanded" defendant with his hand. Defendant turned away and then returned with a handgun a few seconds later. Young began to run away in the parking lot, and defendant chased him with an outstretched hand and shot him. Young fell to the ground, and defendant walked up to him and shot him again at least once. Defendant then fled the scene. The State indicated that these events were all captured on surveillance video. The State also noted that defendant had a concealed carry license at the time of the incident.

¶ 14　　　　Defense counsel proffered that defendant went to the restaurant by himself and was approached by Young and several other individuals. Young had previously been aggressive toward defendant and his family. When defendant went up to the pickup window to get his food, Young or one of the individuals with him started swinging at defendant repeatedly. Counsel stated defendant was struck at least two times by one or two of these individuals. Counsel asserted defendant was "moderately disabled" and had "a very lengthy health history," including

- 5 -

problems with his leg, spine, and back. Counsel stated defendant also had brain damage due to a heavy object falling on his head when he was younger. Counsel asserted that defendant drew his firearm because he could not defend himself due to his physical condition and he fired the gun.

¶ 15 Counsel argued that defendant did not pose a real and present threat to the community because he was disabled and had no criminal history. Counsel stated defendant worked full time and was the primary source of income for his family, including his four children. Counsel argued that a stay-away order would be sufficient to protect the victim. Counsel also argued there were less restrictive means than detention to mitigate any threat defendant posed, like electronic monitoring.

¶ 16 The State asserted that the video did not show defendant being attacked by a group of people. It showed Young striking him with a "backhand slap." Defendant was then out of the view of the camera for a few seconds, and he had a gun when he returned to the camera's view. The video showed Young running away and defendant chasing him with the gun.

¶ 17 The trial court stated it was denying defendant's request for release and continuing his detention. The court stated that its decision was largely based on its acceptance of the State's version of the video. The court stated that if defense counsel viewed the video and found that it showed something different than what the State had represented, the court would reconsider its ruling.

¶ 18 On November 21, 2024, defendant filed a motion for relief, arguing the State could not prove by clear and convincing evidence that the proof was evident or the presumption great that defendant had committed a forcible felony without lawful justification. Defendant asserted that his proffer at the last hearing on detention constituted a *prima facie* claim of self-defense. Defendant also argued the State could not prove that he posed a danger to Young or

the community that could not be mitigated by any combination of conditions of pretrial release. Defendant argued that he had no history of criminal activity or failure to obey court orders. Defendant also argued that the trial court's initial detention order "cited insufficient rationale regarding whether any combination of conditions could mitigate the real and present threat to the safety of any person or the community that it found [defendant] to pose."

¶ 19    On December 11, 2024, the trial court held a hearing on the motion for relief. A third judge presided over this hearing. Defense counsel argued that the State had not established that the proof was evident or the presumption great that defendant had committed the charged offense because he acted in self-defense. Counsel asserted that Young had acted aggressively toward defendant on several prior occasions, including one occasion in 2011 when Young shot at the residence where defendant lived with his mother. Counsel also stated that Young was a felon and had a criminal history.

¶ 20    Counsel also argued that the State could not prove that defendant posed a danger to Young or the community that could not be mitigated by any combination of conditions of pretrial release. Counsel stated that defendant had no criminal history and that there was nothing in his background to support a conclusion that he would not be able to follow court orders. Counsel asserted that defendant was employed prior to his incarceration and was the primary source of income for his four children. Counsel suggested that defendant could be placed on electronic monitoring or home confinement. Counsel also argued that the written detention order "fell short of providing an adequate individualized explanation as to why less restrictive conditions would be insufficient to mitigate any threat that the Court perceived [defendant] to pose."

¶ 21    The State argued that defendant was a danger to the community and stated the

video recording of the incident did not support defendant's claim that he was justified in his use of force against Young. The surveillance video recording of the incident was played in court.

¶ 22  The trial court denied the motion for relief. The court stated it agreed with the judge who presided over the initial detention hearing that the video was "chilling." The court found that the video was "compelling" and showed defendant shooting Young while Young was running away. The court found the proof was evident and the presumption great that defendant committed the offense. The court also found that, based on defendant's behavior, he posed a danger, and it stated it was "not satisfied there is a condition or combination of conditions that could mitigate the real and present threat the [defendant] poses."

¶ 23  This appeal followed.

¶ 24                            II. ANALYSIS

¶ 25  On appeal, defendant has filed a memorandum pursuant to Illinois Supreme Court Rule 604(h) (eff. Apr. 15, 2024) in which he argues that the trial court erred by finding that he posed a real and present threat to the safety of any person or the community that could not be mitigated by conditions of pretrial release, like home confinement and electronic monitoring. Defendant asserts that he is a "physically disabled, small [built] man" who lacks any criminal history. Defendant argues the State presented no evidence that he would be at risk of incurring new charges if he were released or that he had any tendency not to abide by court orders. Defendant also notes that he was gainfully employed and financially supported his four children prior to his detention. Defendant also argues in his memorandum that the court's written findings in the initial detention order and in the order denying the motion for relief were insufficient.

¶ 26  "Illinois law now presumes all defendants are eligible for pretrial release." *People v. Morgan*, 2025 IL 130626, ¶ 24; 725 ILCS 5/110-2(a), 110-6.1(e) (West 2022). However, the

trial court may deny pretrial release when the State files a verified petition and proves by clear and convincing evidence that (1) the proof is evident or presumption great that the defendant committed a detainable offense; (2) the defendant poses a real and present threat to the safety of any person, persons, or the community, based on the specific, articulable facts of the case; and (3) no condition or combination of conditions of pretrial release can mitigate this threat. 725 ILCS 5/110-6.1(e)(1)-(3) (West 2022); see *Morgan*, 2025 IL 130626, ¶ 24.

¶ 27 "[T]he fact that a person is charged with a detainable offense is not enough to order detention, nor is it enough that the defendant poses a threat to public safety." *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 18. Rather, "the trial court must determine, based on the specific facts of the case and the defendant's individual background and characteristics, whether any combination of conditions can mitigate the threat and allow the defendant's release." *Id.* "Decisions regarding release, conditions of release, and detention prior to trial must be individualized, and no single factor or standard may be used exclusively to order detention." 725 ILCS 5/110-6.1(f)(7) (West 2022).

¶ 28 "[W]hen live witness testimony is presented at a pretrial detention hearing, a circuit court's ultimate detention decision under section 110-6.1, in addition to any underlying factual findings supporting the decision, will not be disturbed on review unless found to be contrary to the manifest weight of the evidence." *Morgan*, 2025 IL 130626, ¶ 43. However, when, as in this case, the parties proceed solely by proffer, the standard of review is *de novo*. *Id.* ¶ 51. In such a situation, "the reviewing court stands in the same position as the circuit court and may therefore conduct its own independent review of the proffered evidence and evidence otherwise documentary in nature." *Id.*

¶ 29    Initially, we note that the trial court's review of the surveillance video of the incident was crucial to its detention decision and its ruling on the motion for relief. Despite the video being introduced into evidence at the detention hearing, defendant has not included it in the record on appeal. Accordingly, we are unable to conduct our own independent review of the video and will accept the trial court's description of its contents. See *People v. Carter*, 2015 IL 117709, ¶ 19 ("[T]he appellant *** has the burden to present a sufficiently complete record such that the court of review may determine whether there was the error claimed by the appellant."); *People v. Gavin*, 2022 IL App (4th) 200314, ¶ 71 ("Any doubt arising from the incompleteness of the record will be construed against the appellant.").

¶ 30    We now turn to the question of whether the trial court erred by determining the State had proven by clear and convincing evidence that defendant posed a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case. Section 110-6.1(g) of the Code (725 ILCS 5/110-6.1(g) (West 2022)) sets forth a nonexhaustive list of factors the trial court may consider in making this determination. These factors include: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the identity of any person to whose safety the defendant is believed to pose a threat and the nature of the threat; (4) any statements made by the defendant and the circumstances surrounding the statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of any victim; (7) whether the defendant is known to possess or have access to weapons; (8) whether, at the time of the current offense or any other offense, the defendant was on probation, parole, mandatory supervised release, or other release from custody pending trial, sentencing, appeal, or completion of a criminal sentence; and (9) any

- 10 -

other factors "deemed by the court to have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior." *Id.*

¶ 31    We find the trial court did not err by determining that defendant posed a real and present threat to the safety of the victim and the community generally. Here, the nature and circumstances of the offense, evidence that defendant possessed and had access to a firearm, and defendant's admission to shooting Young supported the court's finding. See 725 ILCS 5/110-6.1(g)(1), (4), (7) (West 2022). According to the State's evidence, on the day of the incident, Young and defendant were standing at the walk-up window at a restaurant when Young slapped defendant. Young then turned and ran, and defendant drew a handgun. Defendant chased Young through a parking lot and shot him multiple times, including after Young had fallen to the ground. While the video of the incident was not included in the record on appeal, we note that the public defender who represented defendant at the detention hearing stated the video showed that the shooting occurred in a crowded area.

¶ 32    We next consider whether the trial court erred by determining the State had proven by clear and convincing evidence that no condition or combination of conditions of pretrial release could mitigate the real and present threat posed by defendant based on the specific articulable facts of the case. Section 110-5(a) of the Code (725 ILCS 5/110-5(a) (West 2022)) sets forth a nonexhaustive list of factors the court is to consider in determining which conditions of pretrial release, if any, will ensure the safety of any other person or the community. Relevant here, the court is to consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the real and present threat to the safety of the

community, based on the specific articulable facts of the case, that would be posed by the defendant's release.

¶ 33    We find the trial court did not err by determining that no condition or combination of conditions of pretrial release could mitigate the threat posed by defendant based on the specific, articulable facts of this case. The evidence presented by the State showed that defendant shot Young multiple times as Young was running away from him, including after Young had fallen to the ground. As the offense occurred in a crowded, public area, defendant's actions threatened not only the safety of Young but of any innocent bystanders in the vicinity. The weight of this evidence was strong, as it included a video recording of the incident. The violent nature of the offense supported the court's determination that defendant posed a serious threat to the safety of the community. Thus, we find that the nature and circumstances of the charged offense, the seriousness of the threat defendant poses to the safety of the community, and the weight of the evidence against defendant (see 725 ILCS 5/110-5(a)(1), (2), (4) (West 2022)), supported a finding that no conditions of pretrial release, including electronic monitoring and home confinement, could adequately mitigate the threat defendant poses to others.

¶ 34    In reaching this determination, we acknowledge that evidence was presented in the trial court showing that defendant had no prior adult criminal history, had no history of violating court orders, was gainfully employed at the time of the incident, reported having a medical history of traumatic brain injury and other ailments, and was initially struck by Young during the incident giving rise to the charge against him. However, this must be considered in light of defendant's extremely disproportionate response to Young's attack.

¶ 35    Moreover, the fact that this was defendant's first adult criminal offense does not preclude a finding that defendant should be denied pretrial release. This court has previously

held:

> "[T]he evidence of a defendant's charged conduct, even if it took place on a single occasion, may reflect such a departure from the basic expectations of civil society that it becomes difficult to predict the defendant's compliance with court orders—or even societal norms regarding the safety of others—if the defendant is placed on pretrial release. The presumption in favor of pretrial release *** does not obligate a trial court to release such a defendant in the hopes that his otherwise spotless record will negate the real and present threat he poses to the safety of the community as shown by the State's evidence." *People v. Romine*, 2024 IL App (4th) 240321, ¶ 20.

This is such a case where defendant's charged conduct "reflect[s] such a departure from the basic expectations of civil society" (*id.*) that it casts doubt on his ability to comply with the trial court's orders or societal norms regarding the safety of others despite his lack of criminal history.

¶ 36    Defendant cites *People v. Stock*, 2023 IL App (1st) 231753, ¶ 18, a case involving the charge of aggravated battery with a firearm, for the proposition that the bare allegations of a violent offense are insufficient to justify pretrial incarceration. The *Stock* court stated:

> "[E]ven those accused of violent offenses are presumed eligible for pretrial release, and it is the State who must justify their pretrial detention. [Citation.] This is not to say that alleged facts stating the basic elements of an offense are not relevant or are not part of the proof that no conditions could mitigate the threat posed by a defendant. But more is required. If the base allegations that make up the *sine qua non* of a violent offense were sufficient on their own to establish this element, then the legislature would have simply deemed those accused of violent

- 13 -

offenses ineligible for release. In other words, if alleging that defendant discharged a firearm and struck a person was sufficient to show that no conditions of pretrial release could mitigate any threat, then no defendant charged with aggravated battery/discharge of a firearm would ever be eligible for pretrial release." *Id.*

¶ 37 Pursuant to *Stock*, simply alleging the elements of the offense of aggravated battery with a firearm—*i.e.*, that defendant, in committing a battery, knowingly discharged a firearm and caused injury to another (720 ILCS 5/12-3.05(a)(1) (West 2022))—is insufficient to establish that no condition or combination of conditions of pretrial release could mitigate the threat posed by defendant. However, we must also acknowledge that "the full picture of the underlying events *** may be relevant to the trial court's detention decision." *Romine*, 2024 IL App (4th) 240321, ¶ 17. The court may consider evidence regarding the nature and circumstances of the offense, and such evidence "may also shed light on the other statutory factors governing dangerousness and conditions of release." *Id.* ¶ 19.

¶ 38 Here, as previously discussed, the nature and circumstances of the offense, beyond its mere elements—*i.e.*, that, in a crowded area, defendant chased the fleeing victim and shot him multiple times, including when he was already on the ground—indicate that defendant poses a real and present threat to the safety of the community that cannot be mitigated by the conditions of pretrial release. The nature and circumstances of the offense also shed light on the serious nature of the threat posed by defendant, which is one of the statutory factors the court is to consider in determining what conditions of pretrial release, if any, will reasonably ensure the safety of the community. See 725 ILCS 5/110-4(a)(4) (West 2022).

¶ 39 We next consider defendant's argument in his memorandum that both the trial court's initial detention order and the order on his motion for relief contain insufficient written findings. Section 110-6.1(h)(1) of the Code (725 ILCS 5/110-6.1(h)(1) (West 2022)) states:

> "The court shall, in any order for detention *** make a written finding summarizing the court's reasons for concluding that the defendant should be denied pretrial release, including why less restrictive conditions would not avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case."

However, we have previously held that "a circuit court's oral pronouncements can be considered in conjunction with its written explanation in assessing the court's compliance with section 110-6.1(h)(1)." *People v. Thomas*, 2024 IL App (4th) 240248, ¶ 21; see *People v. Gooden*, 2024 IL App (4th) 231523, ¶ 33 ("[I]f a trial court's written order of detention fails to include some finding or explanation that is present in the court's oral pronouncement at the detention hearing, that omission from the court's written order of detention does not undermine an otherwise appropriate order of detention based upon those oral pronouncements.").

¶ 40 Here, the trial court's oral pronouncements at the initial detention hearing adequately explained its reasons for concluding that defendant should be denied pretrial release. Accordingly, we find that the court's oral pronouncements considered along with its written findings complied with the requirements of section 110-6.1(h)(1). See *Thomas*, 2024 IL App (4th) 240248, ¶ 21.

¶ 41 With regard to the sufficiency of the written findings in the trial court's order denying the motion for relief, we note that the written finding requirement in section 110-6.1(h) of the Code concerns initial detention orders. See 725 ILCS 5/110-6.1(h) (West 2022); *People v.*

*Harris*, 2024 IL App (2d) 240070, ¶ 41; *People v. Stokes*, 2024 IL App (1st) 232022-U, ¶ 38. Moreover, Rule 604(h) does not require the trial court to make any particular written findings in an order denying a motion for relief. Ill. S. Ct. R. 604(h) (eff. Apr. 15, 2024). In any event, we find that the trial court sufficiently set forth its reasons for denying the motion for relief in its oral pronouncements.

¶ 42 Finally, we note that defendant argued in his motion for relief that the State had failed to prove by clear and convincing evidence that the proof was evident or the presumption great that he had committed a detainable offense due to his assertion of self-defense. However, he failed to present this argument as a distinct issue in his memorandum pursuant to Rule 604(h), and he did not state in his memorandum that he was advancing this argument on appeal. Rule 604(h)(7) provides:

> "The motion for relief will serve as the argument of the appellant on appeal, The appellant may file, but is not required to file, a memorandum ***. Issues raised in the motion for relief are before the appellate court regardless of whether the optional memorandum is filed. If a memorandum is filed, it must identify which issues from the motion for relief are being advanced on appeal." *Id.*

¶ 43 We have previously held that if a defendant files a memorandum pursuant to Rule 604(h), "it is the controlling document for identifying the issues or claims on appeal, except in limited circumstances such as to determine jurisdictional issues." (Internal quotation marks omitted.) *People v. Andres*, 2024 IL App (4th) 240250, ¶ 21. The Fifth District has held that where a memorandum fails to identify which issues from the motion for relief are being advanced on appeal and fails to provide argument for some of the issues in the motion for relief, those issues are deemed abandoned and will not be addressed on appeal. *People v. Drew*, 2024

IL App (5th) 240697, ¶ 21. We agree with the reasoning in *Drew*, and we find defendant has abandoned his argument that the State failed to prove by clear and convincing evidence that the proof was evident or the presumption great that he had committed a detainable offense based on claimed self-defense.

¶ 44                               III. CONCLUSION

¶ 45          For the reasons stated, we affirm the trial court's judgment.

¶ 46          Affirmed.