NOTICE
Decision filed 01/16/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250825-U

NO. 5-25-0825

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Effingham County. |
| | ) | |
| v. | ) | No. 25-CF-270 |
| | ) | |
| HEATHER M. LINDEMANN, | ) | Honorable |
| | ) | Bryan M. Kibler, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Justices Vaughan and Sholar concurred in the judgment.

**ORDER**

¶ 1   *Held*: We affirm the circuit court's orders granting the State's verified petition to deny pretrial release and denying defendant's subsequent motion for relief where the record contains clear and convincing evidence that defendant committed the detainable offense of escape and that defendant posed a high likelihood of willful flight from prosecution and no conditions of release would reasonably ensure her appearance at future hearings or mitigate that risk.

¶ 2   Defendant, Heather M. Lindemann, appeals orders of the Effingham County circuit court granting the State's petition to deny pretrial release and denying her subsequent motion for relief. We affirm.

¶ 3                         I. BACKGROUND

¶ 4   On September 22, 2025, the State filed an information charging defendant with one count of escape (720 ILCS 5/31-6(a) (West 2024)). The State alleged that on or about August 14, 2025,

1

defendant intentionally escaped from the Effingham County jail by failing to report there after a medical furlough as ordered by the court in another pending criminal case.

¶ 5    On the same date, the State filed a petition to deny pretrial release. The State asserted that (1) the proof was evident and the presumption great that defendant committed a detainable offense, and (2) defendant had a high likelihood of willful flight to avoid prosecution.

¶ 6    Also on September 22, 2025, the State filed a pretrial investigation report (PTI). According to the report, defendant stated that she lived in the same residence for the past four years and most of her family lived in the area. In addition, defendant stated that she was self-employed selling second-hand items online. The PTI noted that this information could not be verified because defendant did not provide Pretrial Services with a collateral contact. The report further noted that although defendant denied having a history of substance abuse, court records indicated that she had a 2024 conviction for possession of methamphetamine.

¶ 7    The PTI included the results of the Virginia Pretrial Risk Assessment Instrument-Revised (VPRAI-R). Defendant's score was 9 out of a possible 14 points, placing her at level five of six for risk that pretrial conditions will fail. The report noted that the failure rate for individuals at this level is 29.3%.

¶ 8    The PTI also contained lists of defendant's pending and prior charges. It indicated that at that time, she was facing charges of theft, criminal damage to property, and cruel treatment of animals in Effingham County case No. 25-CF-177; charges of methamphetamine trafficking, methamphetamine delivery, and possession of methamphetamine in Effingham County case No. 25-CF-175; charges of possession of methamphetamine and resisting a police officer in Effingham County case No. 24-CF-121; a charge of improper use of registration/title in Effingham County case No. 24-MT-163, and a charge of retail theft in Saline County case No. 20-CM-182. A list of

2

defendant's previous convictions indicated that she had 2024 convictions for possession of methamphetamine and theft in two separate cases. Finally, the PTI indicated that defendant failed to appear for hearings in the various criminal proceedings against her on the following dates: March 3, 2021; February 2, 2023; March 13, 2024; July 5, 2024; and September 18, 2025.

¶ 9    The circuit court held a hearing on the State's petition to deny pretrial release on September 22, 2025. The court simultaneously considered petitions to revoke pretrial release in two pending cases (Effingham County case Nos. 25-CF-177 and 25-CF-175).

¶ 10    The State first presented a factual basis underlying the charge of escape at issue in this case, indicating that the administrator of the Effingham County jail would testify to the following: On August 8, 2025, defendant was transported to St. Anthony Memorial Hospital after being granted a medical furlough. After receiving treatment at St. Anthony's, she was transferred to Carle Hospital in Peoria. On August 14, someone from Carle contacted the Effingham County jail to notify jail personnel that defendant was being discharged from the hospital that day. The caller indicated that hospital staff also advised defendant that she was to report to the Effingham County jail immediately and arranged transportation to get her there. The State explained, however, that defendant did not return to jail and she also did not contact jail staff.

¶ 11    The State next proffered the factual basis for a new charge of resisting a police officer filed against defendant in case No. 25-CM-172. Deputy Halsey would testify that when officers attempted to arrest defendant pursuant to a warrant on September 19, 2025, they had to kick in the locked door to a bedroom because defendant refused to open it. Deputy Halsey would further testify that when he and Deputy Loy attempted to handcuff defendant, she "continuously tried to pull her arms away" and told them she could not return to jail.

¶ 12    The State argued that the proof was evident and the presumption great that defendant committed a Class 3 felony in this case. The State further argued that there is a risk of willful flight and that no conditions of pretrial release would prevent her from trying to flee based upon her failure to return from her medical furlough and her statements to Deputies Halsey and Loy. In addressing the petition to revoke pretrial release in case Nos. 25-CF-175 and 25-CF-177, the State emphasized that defendant committed two additional offenses while on pretrial release in those cases—the Class 3 felony of escape involved in this case and the Class A misdemeanor of resisting a police officer. The State argued that no conditions of release would prevent her from committing further Class A or higher offenses.

¶ 13    In response, defense counsel first argued that the motions in all three cases were moot because defendant was still detained in an earlier case (No. 24-CF-121). Defense counsel acknowledged that defendant could potentially be released if the court granted a pending motion to suppress evidence in that case but argued that the State could file any motions for detention in the future if that occurred. Defense counsel urged the court to deny the State's motions on the basis of mootness.

¶ 14    Next, defense counsel addressed the circumstances of defendant's failure to return from her medical furlough, explaining that when defendant was discharged from the hospital, she was "a bit confused about—everything that's going on." He argued that defendant tried to comply. Counsel did not address the availability of any conditions of pretrial release, noting that it was unnecessary to do so because defendant would remain detained in case No. 24-CF-121 regardless of the court's ruling.

¶ 15    In ruling on the State's petition to deny release in this case, the circuit court found that the proof was evident and the presumption great that defendant committed the offense of escape.

4

Based on defendant's failure to appear after her furlough, the court further found that no set of conditions it could impose would prevent her from failing to appear for future hearings. Addressing the petition to revoke release in case Nos. 25-CF-175 and 25-CF-177, the court first noted that the terms of defendant's pretrial release included requirements that she appear for court hearings and refrain from violating the law. The court found that the State provided clear and convincing evidence that defendant violated these terms by committing new offenses in this case and in case No. 25-CM-172. The court further found that no condition or set of conditions of release would prevent her from committing additional crimes.

¶ 16    On the same day, the court entered a written detention order, expressly finding by clear and convincing evidence that (1) the proof was evident and the presumption great that defendant committed a detainable offense, (2) there was a high likelihood of willful flight to avoid prosecution, and (3) no conditions or combination of conditions would mitigate the risk of willful flight. In a summary of factual findings underlying its conclusion that the proof was evident and the presumption great that defendant committed a detainable offense, the court stated that defendant committed the offense of escape. In the summary of factual findings underlying the court's conclusions concerning the risk of willful flight and the lack of conditions to mitigate that risk, the court stated that defendant's failure to appear after her medical furlough "equates to a flight risk."

¶ 17    On October 2, 2025, defendant appeared before the court for a scheduled hearing on a motion to suppress she had filed in case No. 24-CF-121. The State conceded "that the motion is well taken." However, the State did not intend to *nolle prosequi* the case at that time, explaining that an additional charge of resisting a police officer "would actually be potentially unaffected by

the motion to suppress." The State further noted that at the time of the hearing, defendant was detained on charges in multiple cases.

¶ 18　Regarding the issue of defendant's continued detention, defense counsel indicated that he was working on a written motion for relief but explained that it was taking some time due to the complicated procedural history of defendant's pending cases. He informed the court that while receiving treatment for the injuries she sustained in jail, defendant was diagnosed with cranial aneurysms, and she had a surgical consultation for this condition scheduled in Champaign on October 9. Counsel asked that the court grant defendant pretrial release to allow her to deal with her medical condition. He further stated as follows: "If the Court is not prepared to do that for today, I would ask for a setting for the written motion that I intend to file in the next couple of days/early next week."

¶ 19　The court asked the State's position on two possible options: (1) placing defendant on pretrial release with conditions, or (2) giving her a furlough for her October 9 appointment, possibly with GPS monitoring. The State objected to both options.

¶ 20　In support of its objection, the State asserted that defendant was facing several sentences with a minimum of 20 years in each case and argued that defendant demonstrated she was incapable of refraining from committing Class A misdemeanors or higher offenses. The State emphasized that defendant did not return from her previous medical furlough, and noted that under the County Jail Act, jail personnel were required to transport her to any necessary medical appointments.

¶ 21　Defendant argued in response that because she was never subject to GPS monitoring or other conditions of pretrial release previously, her response to such conditions was unknown. In

addition, she asserted that she was afraid the stress of remaining in jail would aggravate her medical condition, possibly leading to her death.

¶ 22 In ruling from the bench, the court noted that defendant did not return from the furlough she was previously granted and that the court previously found probable cause on charges of "numerous felonies." The court therefore found that defendant was a flight risk. The court stated, "I don't think there's a less restrictive alternative short of detention." In addition, the court found that, due to the lengthy sentences defendant faced, "the incentive to run would be great." The court thus denied defendant's request for release.

¶ 23 In an October 2, 2025, docket entry, the court denied defendant's oral motion for pretrial release "for reasons stated on the record." The court also denied defendant's request for a furlough and ordered the Sheriff's Department to take defendant to her October 9, 2025, medical appointment. The court entered a continuing detention order that same day.

¶ 24 On October 6, 2025, defendant filed a motion for relief pursuant to Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024). She filed an amended motion for relief the same day.[1] Defendant asserted that the court made no specific factual findings concerning the evidence that she committed the offense of escape, either in its written order or its docket entry. She further asserted that the court's findings that she posed a high risk of willful flight and that no conditions of release would mitigate that risk "merely referred to the Escape charge."

¶ 25 With respect to the events surrounding her medical furlough, defendant alleged that when jail personnel found she was in need of medical care on August 8, 2025, she was given a furlough rather than having a deputy accompany her. She asserted, however, that it was unclear whether she

_____

[1]At the hearing on defendant's motion for relief, defense counsel explained that after receiving the State's response to discovery requests, he filed the amended motion for relief to correct some of the factual allegations in the original motion.

was aware of the court's decision to grant a furlough at the time. Defendant alleged that she was initially taken to St. Anthony's Hospital, located a few blocks from the jail, and was transferred to at least one other medical facility before being released from Carle Methodist Hospital in Peoria, approximately 150 miles away, on August 14, 2025, and put in a cab back to Effingham. She alleged that scans taken while she was hospitalized revealed the presence of brain aneurysms, "a very serious and perhaps life-threatening condition," and that she had an October 9 appointment scheduled with a brain surgeon in Champaign.

¶ 26    Defendant further alleged that she had substantial ties to the community and that, although she was currently serving a sentence of First Offender Probation for a Class 3 felony charge of possession of methamphetamine, she did not have any prior convictions for any other felonies or violent offenses. Finally, she alleged that she was never previously subject to an order for pretrial release with specified conditions.

¶ 27    The circuit court held a hearing on defendant's motion for relief that day, at which the court also considered motions for relief in three other pending cases. Asked if he had any proffers, defense counsel replied, "Just to say, Judge, that Ms. Lindemann did not intentionally escape from jail. She is—received very startling and grave health news while she was hospitalized."

¶ 28    The State proffered additional facts concerning the events of August 14, 2025, noting that when defendant was discharged from the hospital that day, hospital staff called the Effingham County Sheriff's Department to inform them of defendant's release. The caller indicated that hospital staff provided defendant with a cab, gave her cab fare, told her she was required to return to the jail, and gave the cab driver the address of the jail. The State argued that, in light of these facts, defendant's failure to return to jail indicated that "she had to have intentionally told the cab driver not to go to the jail, and to change the destination that he was given." The State emphasized

8

that defendant was facing numerous charges and argued in conclusion that no conditions of release would prevent her from committing additional felonies or Class A misdemeanors.

¶ 29    In ruling from the bench, the court noted that its primary concern was defendant's failure to return to jail following her medical furlough even though she knew she was required to do so. In addition, the court emphasized that defendant was facing a possible sentence of between 18 and 80 years on the most serious of the pending charges, giving her "every incentive to not come back to court and face that charge." The court further noted that defendant committed an additional offense. The court stated, "So I think both sections apply, not likely to appear, and she will likely commit further Class A or greater offenses while this case—while all these cases continue to wind its way through the system." Finding that less restrictive alternatives to continued detention did not exist, the court denied defendant's request for release.

¶ 30    In an October 6, 2025, docket entry, the court denied defendant's motion for relief "for reasons stated on October 2, 2025[,] and additional reasons stated today in court." The court entered a written order for continued detention the same day. On October 10, 2025, defendant filed a timely notice of appeal pursuant to Illinois Supreme Court Rule 604(h)(1)(iii) (eff. Apr. 15, 2024).

¶ 31                                        II. ANALYSIS

¶ 32    On appeal, defendant filed a notice in lieu of memorandum. As such, her motion for relief serves as her argument on appeal. Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024).

¶ 33    All criminal defendants are presumptively eligible for pretrial release, even those charged with violent offenses. *People v. Lopez*, 2025 IL App (2d) 240709, ¶ 20; see also 725 ILCS 5/110-2(a) (West 2024). Pretrial release may only be denied "in certain statutorily limited situations." *Lopez*, 2025 IL App (2d) 240709, ¶ 15 (citing 725 ILCS 5/110-6.1(e) (West 2022)). Pertinent here,

9

a circuit court may deny pretrial release if the State proves by clear and convincing evidence that (1) the proof is evident or the presumption great that defendant committed a detainable offense, (2) defendant poses either a flight risk or a real and present threat to the safety of any person or the community, and (3) conditions of pretrial release would not prevent defendant's willful flight from prosecution and/or mitigate the threat. *People v. Horne*, 2023 IL App (2d) 230382, ¶ 16.

¶ 34     In determining whether any conditions of pretrial release will ensure a defendant's appearance as required, a circuit court must consider several factors, including (1) the nature and circumstances of the offense; (2) the weight of the evidence against defendant; (3) defendant's history and characteristics, including mental and physical health, ties to the community, family ties, conduct, and record concerning court appearances; and (4) whether defendant was on pretrial release, probation, or parole when the offense at issue took place. 725 ILCS 5/110-5(a) (West 2024). No one factor is dispositive. *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 9.

¶ 35     In its detention order, the court must make a written finding summarizing its reasons for denying pretrial release, "including why less restrictive conditions would not avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or prevent the defendant's willful flight from prosecution." 725 ILCS 5/110-6.1(h)(1) (West 2024). In determining whether the circuit court complied with this requirement, we may consider its written order in conjunction with its oral statements explaining its ruling. *People v. Thomas*, 2024 IL App (4th) 240248, ¶ 21; *People v. Andino-Acosta*, 2024 IL App (2d) 230463, ¶ 19; see also *People v. Odehnal*, 2024 IL App (5th) 230877-U, ¶ 11 (noting that at the detention hearing the court "failed to provide any explanation as to why, under the

10

pertinent facts, less restrictive means would not ensure the safety of the victim or the community" before concluding that the circuit court's written order was inadequate).[2]

¶ 36 Our standard of review on appeal depends on the nature of the evidence presented at the detention hearing. Where the parties present the testimony of live witnesses, we review the circuit court's decision to determine whether it is against the manifest weight of the evidence. *People v. Morgan*, 2025 IL 130626, ¶ 54. However, where the parties proceed by proffer, as they did in this case, the appellate court "stands in the same position as the circuit court and may therefore conduct its own independent review of the proffered evidence and evidence otherwise documentary in nature." *Id.* ¶ 51. Our review is thus *de novo*. *Id.* ¶ 54. This means we conduct the same analysis the circuit court would conduct, and we are not bound by its findings. *Lopez*, 2025 IL App (2d) 240709, ¶ 18.

¶ 37 In her motion for relief, defendant asserted that the circuit court's written summaries of findings in its detention order did not contain factual findings related to the specific facts and circumstances of this case. As stated above, we may consider the court's oral pronouncements in ruling from the bench in conjunction with its written detention order to determine whether the court's findings were adequate. See *Thomas*, 2024 IL App (4th) 240248, ¶ 21. The purpose of requiring these findings is "to give notice of the reasons for the court's findings for appellate review." *Id.* Here, when considered together, the court's oral and written findings were adequate to serve that purpose. The parties addressed the circumstances of defendant's failure to report to the Effingham County jail after her discharge from the hospital at length. The court stated on the record that its greatest concern was defendant's failure to return to jail despite her knowledge that

---

[2]We cite *People v. Odehnal* as persuasive authority in accordance with Illinois Supreme Court Rule 23(e)(1) (eff. June 3, 2025).

she was required to do so. The court also emphasized the fact that defendant violated the terms of her pretrial release in case No. 24-CF-121, both by committing new offenses and by failing to appear for court hearings. These findings were sufficient to apprise defendant and this court of the reasons for the circuit court's ruling.

¶ 38    Further, we find that the evidence before the circuit court was more than adequate to support its decision. We acknowledge that defendant's prior criminal history was minimal and she reported having significant ties to her community. However, when defendant committed the offense at issue in this case, she was on pretrial release in two other pending cases and on a medical furlough after the court revoked her pretrial release in another pending case. In addition, the PTI reveals that defendant was also on probation when the offense occurred. In view of this, defendant was unlikely to comply with any conditions of release the court might impose. Moreover, respondent had a demonstrated history of failing to attend court hearings. We find no error in the circuit court's decision.

¶ 39                                III. CONCLUSION

¶ 40    For the foregoing reasons, we affirm the orders of the circuit court granting the State's petition to deny pretrial release and denying defendant's motion for relief.


¶ 41    Affirmed.